## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

FREDRIC RUSSELL MANCE, JR; TRACEY AMBEAU HANSON;
ANDREW HANSON; CITIZENS COMMITTEE FOR THE
RIGHT TO KEEP AND BEAR ARMS,

Plaintiffs-Appellees,

v.

LORETTA LYNCH, U.S. ATTORNEY GENERAL; THOMAS E. BRANDON,
Acting Director, Bureau of Alcohol, Tobacco, Firearms & Explosives,

Defendants-Appellants.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
Civil Action No. 4:14-cv-539

GOVERNMENT'S RECORD EXCERPTS

BENJAMIN C. MIZER
   *Principal Deputy Assistant Attorney
   General*

JOHN R. PARKER
   *Acting United States Attorney*

MARK B. STERN
   (202) 514-5089
MICHAEL S. RAAB
   (202) 514-4053
TARA S. MORRISSEY
   (202) 353-9018
   *Attorneys, Appellate Staff
   Civil Division, Room 7261
   U.S. Department of Justice
   950 Pennsylvania Ave., N.W.
   Washington, D.C. 20530*

# Table of Contents

| Item | Record Cite | Excerpt Page |
|------|-------------|--------------|
| 1. Docket Sheet | ROA.1 | GRE1 |
| 2. Notice of Appeal | ROA.541 | GRE9 |
| 3. Final Judgment, Feb. 11, 2015 | ROA.491 | GRE11 |
| 4. Memorandum Opinion and Order, Feb. 11, 2015 | ROA.463 | GRE12 |

Optional Contents:
| Item | Record Cite | Excerpt Page |
|------|-------------|--------------|
| 5. Second Amended Complaint | ROA.446 | GRE40 |
| 6. State Residency Restrictions I | ROA.212 | GRE52 |
| 7. State Residency Restrictions II | ROA.393 | GRE58 |

CERTIFICATE OF SERVICE

# Docket Sheet

# U.S. District Court
## Northern District of Texas (Fort Worth)
## CIVIL DOCKET FOR CASE #: 4:14-cv-00539-O

Mance et al v. Holder et al
Assigned to: Judge Reed C O'Connor
Case in other court: U S Court of Appeals 5th Circuit, 15-10311
Cause: 28:1343 Violation of Civil Rights

Date Filed: 07/14/2014
Date Terminated: 02/11/2015
Jury Demand: None
Nature of Suit: 440 Civil Rights: Other Civil Rights
Jurisdiction: U.S. Government Defendant

**Plaintiff**

**Fredric Russell Mance, Jr**  represented by  **Alan Gura**
Gura & Possessky
101 N Columbus St
Suite 405
Alexandria, VA 22314
703/835-9085
Fax: 703/997-7665
Email: alan@gurapossessky.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**William B Mateja**
Fish & Richardson PC
1717 Main Street, Suite 5000
Dallas, TX 75201
214/747-5070
Fax: 214/747-2091
Email: mateja@fr.com
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Plaintiff**

**Tracey Ambeau Hanson**  represented by  **Alan Gura**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**William B Mateja**
(See above for address)
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Plaintiff**

**GRE1**

**Andrew Hanson**                               represented by   **Alan Gura**
                                                                (See above for address)
                                                                *LEAD ATTORNEY*
                                                                *PRO HAC VICE*
                                                                *ATTORNEY TO BE NOTICED*
                                                                *Bar Status: Not Admitted*

                                                                **William B Mateja**
                                                                (See above for address)
                                                                *ATTORNEY TO BE NOTICED*
                                                                *Bar Status: Admitted/In Good Standing*

**Plaintiff**

**Citizens Committee for the Right to Keep**      represented by   **Alan Gura**
**and Bear Arms**                                               (See above for address)
                                                                *LEAD ATTORNEY*
                                                                *PRO HAC VICE*
                                                                *ATTORNEY TO BE NOTICED*
                                                                *Bar Status: Not Admitted*

                                                                **William B Mateja**
                                                                (See above for address)
                                                                *ATTORNEY TO BE NOTICED*
                                                                *Bar Status: Admitted/In Good Standing*

V.

**Defendant**

**Eric H Holder, Jr**                            represented by   **Lesley R Farby-DOJ**
*Attorney General of the United States*                         US Department of Justice
                                                                Civil Division Federal Programs Branch
                                                                20 Massachusetts Ave NW
                                                                Washington, DC 20530
                                                                202/514-3481
                                                                Fax: 202/616-8470
                                                                Email: lesley.farby@usdoj.gov
                                                                *LEAD ATTORNEY*
                                                                *ATTORNEY TO BE NOTICED*
                                                                *Bar Status: Not Admitted*

                                                                **Daniel M Riess**
                                                                US Department of Justice - Civil Division
                                                                20 Massachusetts Ave NW
                                                                Washington, DC 20530
                                                                202/353-3098
                                                                Fax: 202/616-8460
                                                                Email: Daniel.Riess@usdoj.gov
                                                                *ATTORNEY TO BE NOTICED*
                                                                *Bar Status: Not Admitted*

**Defendant**

**B Todd Jones**
*Director, Bureau of Alcohol, Tobacco,*
*Firearms & Explosives*

represented by **Lesley R Farby-DOJ**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
Bar Status: Not Admitted

**Daniel M Riess**
(See above for address)
*ATTORNEY TO BE NOTICED*
Bar Status: Not Admitted

| Date Filed | # | Docket Text |
|---|---|---|
| 07/14/2014 | 1 (p.9) | COMPLAINT against All Defendants filed by Frederic Russell Mance, Citizens Committee for the Right to Keep and Bear Arms, Andrew Hanson, Tracey Amebau Hanson. (Filing fee $400; Receipt number 0539-6159715) Plaintiff will submit summons(es) for issuance. In each Notice of Electronic Filing, the judge assignment is indicated, and a link to the Judges Copy Requirements is provided. The court reminds the filer that any required copy of this and future documents must be delivered to the judge, in the manner prescribed, within three business days of filing. Unless exempted, attorneys who are not admitted to practice in the Northern District of Texas must seek admission promptly. Forms, instructions, and exemption information may be found at www.txnd.uscourts.gov, or by clicking here: Attorney Information - Bar Membership. If admission requirements are not satisfied within 21 days, the clerk will notify the presiding judge. (Attachments: # 1 (p.9) Cover Sheet) (Mateja, William) (Entered: 07/14/2014) |
| 07/14/2014 | 2 (p.21) | CERTIFICATE OF INTERESTED PERSONS/DISCLOSURE STATEMENT by Citizens Committee for the Right to Keep and Bear Arms, Andrew Hanson, Tracey Amebau Hanson, Frederic Russell Mance. (Mateja, William) Modified on 6/1/2015 (tle). (Entered: 07/14/2014) |
| 07/15/2014 | 3 (p.23) | New Case Notes: A filing fee has been paid. File to Judge O Connor. Pursuant to Misc. Order 6, Plaintiff is provided the Notice of Right to Consent to Proceed Before A U.S. Magistrate Judge. Clerk to provide copy to plaintiff if not received electronically. (srs) (Entered: 07/15/2014) |
| 07/15/2014 | 4 (p.25) | AMENDED COMPLAINT against All Defendants filed by Frederic Russell Mance, Jr, Citizens Committee for the Right to Keep and Bear Arms, Andrew Hanson, Tracey Amebau Hanson. Unless exempted, attorneys who are not admitted to practice in the Northern District of Texas must seek admission promptly. Forms, instructions, and exemption information may be found at www.txnd.uscourts.gov, or by clicking here: Attorney Information - Bar Membership. If admission requirements are not satisfied within 21 days, the clerk will notify the presiding judge. (Mateja, William) (Entered: 07/15/2014) |
| 07/21/2014 | 5 (p.37) | Request for Clerk to issue Summons filed by Citizens Committee for the Right to Keep and Bear Arms, Andrew Hanson, Tracey Amebau Hanson, Eric H. Holder, Jr, B. Todd Jones, Frederic Russell Mance, Jr. (Mateja, William) . Modified on 6/1/2015 (tle). (Entered: 07/21/2014) |
| 07/21/2014 | 6 (p.39) | Request for Clerk to issue Summons filed by Citizens Committee for the Right to Keep and Bear Arms, Andrew Hanson, Tracey Amebau Hanson, Frederic Russell Mance, Jr. (Mateja, William) Modified on 6/1/2015 (tle). (Entered: 07/21/2014) |

15-10311.3

| | | |
|---|---|---|
| 07/21/2014 | 7 (p.41) | Request for Clerk to issue Summons filed by Citizens Committee for the Right to Keep and Bear Arms, Andrew Hanson, Tracey Amebau Hanson, Frederic Russell Mance, Jr. (Mateja, William) (Modified on 6/1/2015 (tle). (Entered: 07/21/2014) |
| 07/21/2014 | 8 (p.43) | Summons Issued as to Eric H. Holder, Jr. (srs) (Entered: 07/21/2014) |
| 07/21/2014 | 9 (p.45) | Summons Issued as to U.S. Attorney's Office (srs) (Entered: 07/21/2014) |
| 07/21/2014 | 10 (p.47) | Summons Issued as to B. Todd Jones. (srs) (Entered: 07/21/2014) |
| 08/15/2014 | 11 (p.49) | SUMMONS Returned Executed as to Eric H. Holder, Jr ; served on 7/24/2014. (Attachments: # 1 (p.9) Exhibit(s) "A" Proof of Service) (Mateja, William) (Entered: 08/15/2014) |
| 08/15/2014 | 12 (p.53) | SUMMONS Returned Executed as to B. Todd Jones ; served on 7/30/2014. (Attachments: # 1 (p.9) Exhibit(s) "A" - Proof of Service) (Mateja, William) (Entered: 08/15/2014) |
| 08/15/2014 | 13 (p.56) | SUMMONS Returned Executed as to Eric H. Holder, Jr ; served on 7/28/2014. (Attachments: # 1 (p.9) Exhibit(s) "A" Proof of Service) (Mateja, William) (Entered: 08/15/2014) |
| 09/03/2014 | 14 | Notice to the Parties: Please be advised that as of Tuesday, September 2, 2014, Judge Reed O'Connor's chambers will be located at 501 W. 10th Street, Room 202, Fort Worth, Texas 76102. All hearing and trial locations will be provided by individual orders of the court. Any paper copies should be forwarded to his Fort Worth chambers address. If you need to know whether you must send him a paper copy of a document that you have docketed in this case, click here: Judges' Copy Requirements. (drh) (Entered: 09/03/2014) |
| 09/23/2014 | 15 (p.59) | MOTION for Summary Judgment *or to Dismiss* filed by Eric H. Holder, Jr, B. Todd Jones (Farby-DOJ, Lesley) (Entered: 09/23/2014) |
| 09/23/2014 | 16 (p.61) | Brief/Memorandum in Support filed by Eric H. Holder, Jr, B. Todd Jones re 15 (p.59) MOTION for Summary Judgment *or to Dismiss* (Farby-DOJ, Lesley) (Entered: 09/23/2014) |
| 09/23/2014 | 17 (p.109) | Appendix in Support filed by Eric H. Holder, Jr, B. Todd Jones re 16 (p.61) Brief/Memorandum in Support of Motion, 15 (p.59) MOTION for Summary Judgment *or to Dismiss* (Attachments: # 1 (p.9) Additional Page(s)) (Farby-DOJ, Lesley) (Entered: 09/23/2014) |
| 09/23/2014 | 18 (p.218) | CERTIFICATE OF INTERESTED PERSONS/DISCLOSURE STATEMENT by Eric H. Holder, Jr, B. Todd Jones. (Farby-DOJ, Lesley) (Entered: 09/23/2014) |
| 10/16/2014 | 19 (p.220) | Application for Admission Pro Hac Vice with Certificate of Good Standing (Filing fee $25; Receipt number 0539-6362297) filed by Citizens Committee for the Right to Keep and Bear Arms, Andrew Hanson, Tracey Amebau Hanson, Frederic Russell Mance, Jr (Attachments: # 1 (p.9) Proposed Order, # 2 (p.21) Exhibit(s) Certificate of Good Standing) (Gura, Alan) (Entered: 10/16/2014) |
| 10/17/2014 | 20 (p.227) | ORDER Alan Gura's 19 (p.220) Application for Admission Pro Hac Vice with Certificate of Good Standing is granted. ORDERED Plaintiffs file their response to 15 (p.59) MOTION for Summary Judgment *or to Dismiss* on or before 10/22/14. (Ordered by Judge Reed C O'Connor on 10/17/2014) (ult) (Entered: 10/17/2014) |
| 10/17/2014 | 21 (p.228) | |

| | | MOTION for Summary Judgment filed by Citizens Committee for the Right to Keep and Bear Arms, Andrew Hanson, Tracey Amebau Hanson, Frederic Russell Mance, Jr (Attachments: # 1 (p.9) Proposed Order) (Gura, Alan) (Entered: 10/17/2014) |
|---|---|---|
| 10/17/2014 | 22 (p.234) | Brief/Memorandum in Support filed by Citizens Committee for the Right to Keep and Bear Arms, Andrew Hanson, Tracey Amebau Hanson, Frederic Russell Mance, Jr re 21 (p.228) MOTION for Summary Judgment (Gura, Alan) (Entered: 10/17/2014) |
| 10/17/2014 | 23 (p.279) | Appendix in Support filed by Citizens Committee for the Right to Keep and Bear Arms, Andrew Hanson, Tracey Amebau Hanson, Frederic Russell Mance, Jr re 21 (p.228) MOTION for Summary Judgment (Gura, Alan) (Entered: 10/17/2014) |
| 10/17/2014 | 24 (p.295) | RESPONSE filed by Citizens Committee for the Right to Keep and Bear Arms, Andrew Hanson, Tracey Amebau Hanson, Frederic Russell Mance, Jr re: 15 (p.59) MOTION for Summary Judgment *or to Dismiss* (Attachments: # 1 (p.9) Proposed Order) (Gura, Alan) (Entered: 10/17/2014) |
| 10/22/2014 | 25 (p.325) | Unopposed MOTION for Leave to File a Combined Response Brief to Plaintiffs' Motion for Summary Judgment and Reply in Support of Defendants' Motion to Dismiss or for Summary Judgment filed by Eric H. Holder, Jr, B. Todd Jones (Farby-DOJ, Lesley) (Entered: 10/22/2014) |
| 10/23/2014 | 26 (p.328) | ORDER granting 25 (p.325) Motion for Leave to File. (The requesting party must file the document with the clerk.) (Ordered by Judge Reed C O'Connor on 10/23/2014) (ult) (Entered: 10/23/2014) |
| 11/07/2014 | 27 (p.329) | RESPONSE filed by Eric H Holder, Jr, B Todd Jones re: 21 (p.228) MOTION for Summary Judgment (Farby-DOJ, Lesley) (Entered: 11/07/2014) |
| 11/07/2014 | 28 (p.331) | Brief/Memorandum in Support filed by Eric H Holder, Jr, B Todd Jones re 27 (p.329) Response/Objection *and Reply in Support of Defendants' Motion to Dismiss or for Summary Judgment* (Farby-DOJ, Lesley) (Entered: 11/07/2014) |
| 11/07/2014 | 29 (p.391) | Appendix in Support filed by Eric H Holder, Jr, B Todd Jones re 28 (p.331) Brief/Memorandum in Support of Motion, 27 (p.329) Response/Objection (Farby-DOJ, Lesley) (Entered: 11/07/2014) |
| 11/24/2014 | 30 (p.398) | MOTION to Amend/Correct 4 (p.25) Amended Complaint,, filed by Citizens Committee for the Right to Keep and Bear Arms, Andrew Hanson, Tracey Amebau Hanson, Frederic Russell Mance, Jr with Brief/Memorandum in Support. (Attachments: # 1 (p.9) Proposed Amendment, # 2 (p.21) Proposed Order) (Gura, Alan) (Entered: 11/24/2014) |
| 11/24/2014 | 31 (p.418) | REPLY filed by Citizens Committee for the Right to Keep and Bear Arms, Andrew Hanson, Tracey Amebau Hanson, Frederic Russell Mance, Jr re: 21 (p.228) MOTION for Summary Judgment (Gura, Alan) (Entered: 11/24/2014) |
| 11/26/2014 | 32 (p.445) | ORDER granting 30 (p.398) Motion to for Leave to File Second Amended Complaint. (Unless the document has already been filed, clerk to enter the document as of the date of this order.) (Ordered by Judge Reed C O'Connor on 11/26/2014) (ewd) (Entered: 11/26/2014) |
| 11/26/2014 | 33 (p.446) | SECOND AMENDED COMPLAINT against Eric H Holder, Jr, B Todd Jones filed by Frederic Russell Mance, Jr, Citizens Committee for the Right to Keep and |

| | | |
|---|---|---|
| | | Bear Arms, Andrew Hanson, Tracey Amebau Hanson. Unless exempted, attorneys who are not admitted to practice in the Northern District of Texas must seek admission promptly. Forms, instructions, and exemption information may be found at www.txnd.uscourts.gov, or by clicking here: Attorney Information - Bar Membership. If admission requirements are not satisfied within 21 days, the clerk will notify the presiding judge. (ewd) (Entered: 11/26/2014) |
| 12/12/2014 | 34 (p.458) | ORDER: Defendant's Motion to Dismiss, or in the Alternative, Summary Judgment 15 (p.59) and Plaintiffs' Motion for Summary Judgment 21 (p.228) Motion Hearing set for 12/30/2014 10:00 AM in US Courthouse, Courtroom 2nd Floor, 501 W. 10th St. Fort Worth, TX 76102-3673 before Judge Reed C O'Connor. Parties will have 30 minutes per side for oral argument. (Ordered by Judge Reed C O'Connor on 12/12/2014) (ult) (Entered: 12/15/2014) |
| 12/16/2014 | 35 (p.459) | Joint MOTION to Continue *Hearing Date* filed by Citizens Committee for the Right to Keep and Bear Arms, Andrew Hanson, Tracey Ambeau Hanson, Eric H Holder, Jr, B Todd Jones, Fredric Russell Mance, Jr with Brief/Memorandum in Support. (Farby-DOJ, Lesley) (Entered: 12/16/2014) |
| 12/17/2014 | 36 (p.462) | ORDER granting 35 (p.459) Motion to Continue Hearing Date 35 (p.459) . Motion Hearing set for 1/20/2015 09:00 AM in US Courthouse, Courtroom 2nd Floor, 501 W. 10th St. Fort Worth, TX 76102-3673 before Judge Reed C O'Connor. (Ordered by Judge Reed C O'Connor on 12/17/2014) (ult) (Entered: 12/17/2014) |
| 01/08/2015 | 37 | ELECTRONIC ORDER: Motion Hearing set for 1/20/2015 10:30 AM in US Courthouse, Courtroom 2nd Floor, 501 W. 10th St. Fort Worth, TX 76102-3673 before Judge Reed C O'Connor. (Ordered by Judge Reed C O'Connor on 1/8/2015) (leg) (chmb) (Entered: 01/08/2015) |
| 01/20/2015 | 38 | ELECTRONIC Minute Entry for proceedings held before Judge Reed C O'Connor: Motion Hearing held on 1/20/2015 re 15 (p.59) Motion for Summary Judgment filed by Eric H Holder, Jr, B Todd Jones, 21 (p.228) Motion for Summary Judgment filed by Andrew Hanson, Fredric Russell Mance, Jr, Citizens Committee for the Right to Keep and Bear Arms, Tracey Ambeau Hanson. Attorney Appearances: Plaintiff - Alan Gura; Defense - Lesley Farby. (Court Reporter: Denver Roden) (No exhibits) Time in Court - 2:15. (chmb) Modified on 1/21/2015 (chmb). (Entered: 01/21/2015) |
| 02/06/2015 | 39 | ELECTRONIC Minute Entry for proceedings held before Judge Reed C O'Connor: Telephone Conference held on 2/6/2015. The parties clarified that, when a federal firearms licensee transfers a handgun to an out-of-state purchaser's home-state federal firearms licensee, the background check requirement in 18 U.S.C.§ 922 is completed by the home-state federal firearms licensee. Attorney Appearances: Plaintiff - Alan Gura, Bill Meteja; Defense - Lesley Farby. (Court Reporter: Not Recorded) (No exhibits) Time in Court - :10. (chmb) (Entered: 02/10/2015) |
| 02/11/2015 | 40 (p.463) | Memorandum Opinion and Order. Based on the foregoing, it is ORDERED that Defendants' Motion to Dismiss for lack of standing 15 (p.59) is DENIED. It is FURTHER ORDERED that Plaintiffs' Motion for Summary Judgment 21 (p.228) is GRANTED, and Defendants' Motion for Summary Judgment 15 (p.59) is DENIED. Accordingly, the Court DECLARES that 18 U.S.C. § 922(a)(3), 18 U.S.C. § 922(b)(3), and 27 C.F.R. § 478.99(a) are UNCONSTITUTIONAL, and Defendants are ENJOINED from enforcing these provisions. The Court will issue its final judgment separately. (Ordered by Judge Reed C O'Connor on 2/11/2015) (ndt) (Entered: 02/11/2015) |

| | | |
|---|---|---|
| 02/11/2015 | 41 (p.491) | FINAL JUDGMENT. The Court DECLARES that 18 U.S.C. § 922(a)(3), 18 U.S.C. § 922(b)(3), and 27 C.F.R. § 478.99(a) are UNCONSTITUTIONAL, and Defendants are ENJOINED from enforcing these provisions. (Ordered by Judge Reed C O'Connor on 2/11/2015) (ndt) (Entered: 02/11/2015) |
| 02/13/2015 | 42 (p.492) | MOTION to Stay re 40 (p.463) Memorandum Opinion and Order,, filed by Eric H Holder, Jr, B Todd Jones with Brief/Memorandum in Support. (Riess, Daniel) (Entered: 02/13/2015) |
| 02/13/2015 | 43 (p.494) | CERTIFICATE of Conference re 42 (p.492) MOTION to Stay re 40 (p.463) Memorandum Opinion and Order,, by Daniel M Riess on behalf of All Defendants (Riess, Daniel) (Entered: 02/13/2015) |
| 02/19/2015 | 44 (p.496) | OBJECTION filed by Citizens Committee for the Right to Keep and Bear Arms, Andrew Hanson, Tracey Ambeau Hanson, Fredric Russell Mance, Jr re: 42 (p.492) MOTION to Stay re 40 (p.463) Memorandum Opinion and Order,, (Attachments: # 1 (p.9) Proposed Order) (Gura, Alan) (Entered: 02/19/2015) |
| 02/24/2015 | 45 (p.501) | BILL OF COSTS by Citizens Committee for the Right to Keep and Bear Arms, Andrew Hanson, Tracey Ambeau Hanson, Fredric Russell Mance, Jr. (Mateja, William) (Entered: 02/24/2015) |
| 02/25/2015 | 46 (p.514) | REPLY filed by Eric H Holder, Jr, B Todd Jones re: 42 (p.492) MOTION to Stay re 40 (p.463) Memorandum Opinion and Order,, (Riess, Daniel) (Entered: 02/25/2015) |
| 02/26/2015 | 47 (p.517) | ORDER denying 42 (p.492) Motion for Sixty-Day Stay. Accordingly, the Court finds that a stay is not warranted in the instant action. Should Defendants decide to appeal, they may move this Court to stay its Order pursuant to Rule 62(c) of the Federal Rules of Civil Procedure. (Ordered by Judge Reed C O'Connor on 2/26/2015) (ult) (Entered: 02/26/2015) |
| 03/10/2015 | 48 (p.519) | Costs Taxed in amount of $ 424.72 against Eric H. Holder, Jr. and B. Todd Jones (mem) (Entered: 03/10/2015) |
| 03/10/2015 | 49 (p.532) | OBJECTION filed by Eric H Holder, Jr, B Todd Jones re: 45 (p.501) Bill of Costs (Riess, Daniel) (Entered: 03/10/2015) |
| 03/11/2015 | 50 (p.535) | MOTION for Review of Clerk's Taxation of Costs re 48 (p.519) Costs Taxed filed by Eric H Holder, Jr, B Todd Jones with Brief/Memorandum in Support. (Riess, Daniel) (Entered: 03/11/2015) |
| 04/01/2015 | 51 (p.538) | RESPONSE AND OBJECTION filed by Citizens Committee for the Right to Keep and Bear Arms, Andrew Hanson, Tracey Ambeau Hanson, Fredric Russell Mance, Jr re: 50 (p.535) MOTION for Review of Clerk's Taxation of Costs re 48 (p.519) Costs Taxed (Gura, Alan) (Entered: 04/01/2015) |
| 04/10/2015 | 52 (p.541) | NOTICE OF APPEAL to the Fifth Circuit as to 41 (p.491) Judgment, 40 (p.463) Memorandum Opinion and Order,, by Eric H Holder, Jr, B Todd Jones. T.O. form to appellant electronically at Transcript Order Form or US Mail as appropriate. Copy of NOA to be sent US Mail to parties not electronically noticed. (Riess, Daniel) (Entered: 04/10/2015) |
| 04/15/2015 | 53 (p.543) | Transcript Order Form: re 52 (p.541) Notice of Appeal, transcript requested by B Todd Jones, Eric H Holder, Jr for Hearing on Cross-Motions for Summary Judgment held 1/20/15 Payment method: US Government Funds (Court Reporter: |

| | | Denver Roden.) Modified on 6/1/2015 (tle). (Entered: 04/15/2015) |
|---|---|---|
| 04/15/2015 | 54 (p.547) | REPLY filed by Eric H Holder, Jr, B Todd Jones re: 50 (p.535) MOTION for Review of Clerk's Taxation of Costs re 48 (p.519) Costs Taxed (Riess, Daniel) (Entered: 04/15/2015) |
| 04/16/2015 | 55 (p.549) | ORDER deferring ruling on 50 (p.535) Motion Motion for Review of Clerk's Taxation of Costs. Costs are governed by F.R.Civ.P. 54(d). Here, "Plaintiffs are willing to abstain from enforcing the cost of judgment until after the appeal is resolved." Additionally, Defendants "request that the Court hold Plaintiffs' application in abeyance until after the appeal has concluded."Because the parties appear to agree to abstain from litigating the issue of costs, the Court DEFERS ruling on costs in this matter. Ordered the parties file a joint status report updating this Court on the status of costs upon completion of the appeal. (Ordered by Judge Reed C O'Connor on 4/16/2015) (ult) (Entered: 04/16/2015) |
| 05/06/2015 | | USCA Case Number 15-10311 in U S Court of Appeals 5th Circuit for 52 (p.541) Notice of Appeal, filed by Eric H Holder, Jr, B Todd Jones. (tle) (Entered: 05/06/2015) |
| 05/06/2015 | 56 (p.551) | Notice of Filing of Official Electronic Transcript of Hearing on Motions For Summary Judgment Proceedings held on 01-20-2015 before Judge Reed C. O'Connor. Court Reporter/Transcriber Denver B. Roden, RPR, RMR, Telephone number 214-753-2298. Parties are notified of their duty to review the transcript. A copy may be purchased from the court reporter or viewed at the clerk's office public terminal. If redaction is necessary, a Redaction Request - Transcript must be filed within 21 days. If no such Request is filed, the transcript will be made available via PACER without redaction after 90 calendar days. If redaction request filed, this transcript will not be accessible via PACER; see redacted transcript. The clerk will mail a copy of this notice to parties not electronically noticed. (90 pages) Redaction Request due 5/27/2015. Redacted Transcript Deadline set for 6/8/2015. Release of Transcript Restriction set for 8/4/2015. (dbr) (Entered: 05/06/2015) |

# Notice of Appeal

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION
_____

| | |
|---|---|
| FREDRIC RUSSELL MANCE, JR. *et al.*, | |
| | |
| VS. | Civil Action No. 4:14-CV-00539-O |
| | |
| ERIC HOLDER, ATTORNEY GENERAL OF THE UNITED STATES, and B. TODD JONES, DIRECTOR, BUREAU OF ALCOHOL, TOBACCO, FIREARMS & EXPLOSIVES | |

## NOTICE OF APPEAL

PLEASE TAKE NOTICE that Defendants Eric Holder, Attorney General of the United

States, and B. Todd Jones, Director of the Bureau of Alcohol, Tobacco, Firearms and Explosives,

hereby appeal to the United States Court of Appeals for the Fifth Circuit from the Court's

Memorandum Opinion and Order and Final Judgment entered on February 11, 2015 [ECF Nos.

40, 41].

Dated:  April 10, 2015

Respectfully submitted,

BENJAMIN C. MIZER
Acting Assistant Attorney General

JOHN R. PARKER
Acting United States Attorney

  /s/ Daniel Riess
JOHN TYLER
Assistant Branch Director
DANIEL RIESS
Trial Attorney
U.S. Department of Justice
Civil Division, Rm. 6122
20 Massachusetts Avenue, NW
Washington, D.C. 20530

1

15-10311.541

Telephone: (202) 353-3098
Fax: (202) 616-8460
Email: Daniel.Riess@usdoj.gov
*Attorneys for Defendants*

<u>**CERTIFICATE OF SERVICE**</u>

On April 10, 2015, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court.  I hereby certify that I have served all parties electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2) or the local rules.

 /s/ Daniel Riess
Daniel Riess

2

15-10311.542

# Final Judgment

Feb. 11, 2015

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

|  |  |  |
|---|---|---|
| FREDRIC RUSSELL MANCE, JR. et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. 4:14-cv-539-O |
| | § | |
| ERIC H. HOLDER, JR. and B. TODD JONES, | § | |
| | § | |
| Defendants. | § | |
| | § | |

## FINAL JUDGMENT

The Court issued its order granting Plaintiffs' Motion for Summary Judgment. It is therefore

**ORDERED, ADJUDGED, and DECREED** that Plaintiffs' Motion for Summary Judgment is

**GRANTED**. The Court **DECLARES** that 18 U.S.C. § 922(a)(3), 18 U.S.C. § 922(b)(3), and 27

C.F.R. § 478.99(a) are **UNCONSTITUTIONAL**, and Defendants are **ENJOINED** from enforcing

these provisions.

**SO ORDERED** on this **11th day** of **February, 2015**.

_____
Reed O'Connor
UNITED STATES DISTRICT JUDGE

15-10311.491

# Memorandum Opinion
# and Order

# Feb. 11, 2015

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| FREDRIC RUSSELL MANCE, JR. et al., | § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. 4:14-cv-539-O |
| ERIC H. HOLDER, JR. and B. TODD JONES, | § § § | |
| Defendants. | § § § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are Defendants' Motion to Dismiss, or in the Alternative, for Summary Judgment and their Brief and Appendix in Support (ECF Nos. 15-17), filed September 23, 2014; and Plaintiffs' Response (ECF No. 24), filed October 17, 2014. Also before the Court are Plaintiffs' Motion for Summary Judgment and their Memorandum and Appendix in Support (ECF Nos. 21-23), filed October 17, 2014; Defendants' combined Response and Reply and their Brief and Appendix in Support (ECF No. 27), filed November 7, 2014; and Plaintiffs' Reply (ECF No. 31), filed November 24, 2014. The Court held a hearing on these motions on January 20, 2015. Having considered the motions, the briefing, the record, and the applicable law, the Court finds that Defendants' Motion to Dismiss should be and is hereby **DENIED**. For the reasons that follow, Plaintiffs' Motion for Summary Judgment is **GRANTED**, and Defendants' Motion for Summary Judgment is **DENIED**.

15-10311.463

## I.      BACKGROUND

Plaintiffs Fredric Russell Mance, Jr. ("Mance"), Andrew Hanson ("Andrew Hanson"), Tracey

Ambeau Hanson ("Tracey Hanson"), and the Committee for the Right to Keep and Bear Arms ("the

Committee") (collectively, "Plaintiffs") brought this action to challenge the federal regulatory regime

as it relates to the buying, selling, and transporting of handguns over state lines under 18 U.S.C. §§

922(a)(3) and 922(b)(3). *See* 2d Am. Compl., ECF No. 33. Specifically, Plaintiffs allege that "the

federal interstate handgun [transfer] ban limits their choices as consumers, harms competition in the

market, and raises prices," and the ban infringes on a fundamental right guaranteed by the

Constitution. *Id.* at ¶¶ 22, 35.

At issue are several federal statutes, as well as laws of the state of Texas and the District of

Columbia. Texas law does not forbid the sale of handguns to individuals residing outside the state.

The District of Columbia does not prohibit the importation of firearms, but it does require that all

firearms be registered. *See* D.C. Code § 7-2502.01(a) (2014). Pursuant to provisions enacted as part

of the Gun Control Act of 1968, 18 U.S.C. §§ 921-31, subsections 922(a)(3) and 922(a)(5) forbid

individuals from transporting into or receiving in their state of residency any firearm acquired outside

of that state, except for firearms acquired by bequest or intestate succession or pursuant to a transfer

from a federally licensed dealer under 18 U.S.C. § 922(b)(3). 18 U.S.C. § 922(a). Section 922(b)(3)

and 27 C.F.R. § 478.99(a) bar a federal firearms licensee from transferring[1] firearms to individuals

who do not reside in the state in which the dealer's place of business is located. 18 U.S.C. §

922(b)(3); 27 C.F.R. § 478.99(a). This restriction does not apply to the transfer of shotguns or rifles.

---

[1] Specifically, § 922(b)(3) makes it unlawful for a federal firearms licensee to "sell or deliver" a firearm to a non-federal firearms licensee. 18 U.S.C. § 922(b)(3).

*See* 18 U.S.C. § 922(b)(3); 27 C.F.R. § 478.96(c)(1). The Court refers to these statutes and regulations, collectively, as the federal interstate handgun transfer ban.[2]

The undisputed facts are as follows. Mance, a Texas resident, is a federal firearms licensee ("FFL") who retails firearms from his business in Arlington, Texas. Andrew and Tracey Hanson, a husband and wife, are residents of the District of Columbia and are legally eligible to purchase and possess firearms. On June 21, 2014, the Hansons met with Mance to purchase two handguns. Mance could not sell and deliver the handguns directly to the Hansons because it was illegal to do so under 18 U.S.C. § 922(b)(3) and 27 C.F.R. § 478.99(a). Instead, the only option available to the Hansons and Mance was to transfer the handguns to the only FFL in the District of Columbia, Charles Sykes ("Sykes"), who would then complete the sale. The transfer to Sykes would require a $125-fee per transfer as well as shipping costs. Sykes does not carry his own inventory of firearms. In summary, the Hansons would pay Mance for the firearms in Texas, pay the costs associated with Mance shipping the firearms to Sykes in the District of Columbia, and then retrieve the firearms from Sykes after paying him a $125 transfer fee per firearm. Because the Hansons could not immediately take possession, they declined to complete the transaction with Mance. Tracey Hanson, Andrew Hanson, and Mance are members of the Committee, a non-profit organization dedicated to promoting Second Amendment rights. In response to these restrictions, Plaintiffs filed this action on July 14, 2014.

---

[2] Although "federal interstate handgun transfer ban" may be a bit of a misnomer because these restrictions do not completely bar interstate transfers of handguns, it sufficiently captures the prohibition related to transfers to non-federal firearms licensees. Federal firearms licensees are necessary to complete interstate transactions because a citizen without a federal firearms license is barred from acquiring a handgun directly from a federal firearms licensee in another state. *See* 18 U.S.C. § 922(b) ("Paragraphs (1), (2), (3), and (4) of this subsection shall not apply to transactions between [federal firearms licensees].").

GRE14

They seek injunctive and declaratory relief, costs, and attorney's fees. The instant motions have been fully briefed and are ripe for adjudication.

## II.    LEGAL STANDARDS

Defendants Eric H. Holder, Jr. and B. Todd Jones ("Defendants")[3] move to dismiss Plaintiffs' claims pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), or, in the alternative, to enter summary judgment for Defendants pursuant to Rule 56. Defs.' Mot. Dismiss, ECF No. 15. Because the Court considers evidence beyond the pleadings that has been attached to Defendants' motions as well as attached to Plaintiffs' cross-motion for summary judgment, the motion to dismiss under Rule 12(b)(6) is subsumed by the summary judgment motions. *See Exxon Corp. v. Md. Cas. Co.*, 599 F.2d 659, 661 (5th Cir. 1979).

### A.    Dismissal Under Federal Rule 12(b)(1) for Lack of Standing

"Every party that comes before a federal court must establish that it has standing to pursue its claims." *Cibolo Waste, Inc. v. City of San Antonio*, 718 F.3d 469, 473 (5th Cir. 2013); *see also Barrett Computer Servs., Inc. v. PDA, Inc.*, 884 F.2d 214, 218 (5th Cir. 1989). In claims for declaratory or injunctive relief, standing may be satisfied by the presence of "at least one individual plaintiff who has demonstrated standing to assert the[ ] [contested] rights as his own." *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 264 & n.9 (1977); *see also Horne v. Flores*, 557 U.S. 433, 446-47 (2009). "The doctrine of standing asks 'whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues.'" *Cibolo Waste*, 718 F.3d at 473 (quoting *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 11 (2004)). Constitutional

---

[3] Eric H. Holder is the Attorney General for the United States. B. Todd Jones is the Director of the Bureau of Alcohol, Tobacco, Firearms, and Explosives.

15-10311.466

standing requires a plaintiff to establish that she has suffered an injury in fact traceable to the defendant's actions that will be redressed by a favorable ruling. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

For an association to have standing to bring suit on behalf of its members, the association must show that "[1] its members would otherwise have standing to sue in their own right; [2] the interests it seeks to protect are germane to the organization's purpose; and [3] neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Ass'n of Am. Physicians & Surgeons, Inc. v. Tex. Med. Bd.*, 627 F.3d 547, 550 (5th Cir. 2010) (citation omitted). "The first prong requires that at least one member of the association have standing to sue in his or her own right." *Nat'l Rifle Ass'n of Am., Inc. v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*, 700 F.3d 185, 191 (5th Cir. 2012) [hereinafter *NRA*] (citing *Tex. Democratic Party v. Benkiser*, 459 F.3d 582, 587-88 (5th Cir. 2006)).

### B. Summary Judgment

Summary judgment is proper when the pleadings and evidence on file show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The movant makes a showing that there is no genuine issue of material fact by informing the court of the basis of its motion and by identifying the portions of the record which reveal there are no genuine material fact issues. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); Fed. R. Civ. P. 56(c).

When reviewing the evidence on a motion for summary judgment, the court must decide all reasonable doubts and inferences in the light most favorable to the non-movant. *See Walker v. Sears, Roebuck & Co.*, 853 F.2d 355, 358 (5th Cir. 1988). The court cannot make a credibility determination in light of conflicting evidence or competing inferences. *Anderson*, 477 U.S. at 255. As long as there appears to be some support for the disputed allegations such that "reasonable minds could differ as to the import of the evidence," the motion for summary judgment must be denied. *Id.* at 250.

III.    **ANALYSIS**

A.    **Defendants' Motion to Dismiss for Lack of Standing**

As a threshold issue, the Court must address Defendants' claim that Plaintiffs lack standing to bring the instant action. Defendants argue that the Court should dismiss Plaintiffs' claims for lack of subject-matter jurisdiction for four reasons: (1) the Hansons' alleged injury-in-fact is not traceable to Defendants; (2) the Hansons have not shown redressability; (3) Mance has not suffered an injury-in-fact traceable to the challenged laws; and (4) the Committee has not shown associational standing. *See* Defs.' Br. Supp. Mot. Dismiss, ECF No. 16. While the Court need only establish standing by the presence of at least one individual plaintiff who can assert the contested rights as his own, out of an abundance of caution the Court will address the standing of all parties. *See Vill. of Arlington Heights*, 429 U.S. at 264. The Court first focuses its analysis on the Hansons' claims.

Defendants contend that the Hansons' claimed injury is the $125 transfer fee that Sykes requires to import out-of-state handguns, making the injury traceable only to Sykes and not the challenged statutes. Defs.' Br. Supp. Mot. Dismiss 9-10, ECF No. 16. Defendants rely on the Fourth Circuit's decision in *Lane v. Holder*, 703 F.3d 668 (4th Cir. 2012), in which the Fourth Circuit noted

that section 922(b)(3) was directed at FFLs, not the plaintiffs as potential purchasers, and that the injury alleged was not traceable to the ban, but rather to the FFLs who chose to charge transfer fees. *Lane*, 703 F.3d at 673-74. The *Lane* court also held that the plaintiffs would not suffer an absolute deprivation in that they could obtain handguns even though they face additional costs and logistical hurdles. *Id.* at 673.

The Fifth Circuit, however, has found standing under comparable circumstances when potential individual purchasers challenged an age restriction on firearms purchases. *See NRA*, 700 F.3d at 191. Even though the age restriction did not bar 18-to-20-year-olds from possessing or using handguns, "prohibiting FFLs from selling handguns to 18-to-20-year-olds . . . cause[d] those persons a concrete, particularized injury—i.e., the injury of not being able to purchase handguns from FFLs." *Id.* at 191-92 (citing *Va. State Bd. of Pharmacy v. Va. Citizens Consumer Counsel, Inc.*, 425 U.S. 748, 750-57 (1976)). Unlike *Lane*, the Fifth Circuit found potential individual purchasers had standing, even though the law directly applies to FFLs and even though they did not suffer an absolute deprivation of their Second Amendment rights. *See id.* As the law caused their deprivation and a favorable ruling would relieve them of this injury, the plaintiffs in *NRA* had standing. *Id.*

Here, as in *NRA*, the Hansons are not faced with an absolute deprivation of their rights, but they are still faced with a present injury—their inability to purchase and take possession of handguns directly from an FFL at the time they desire due to their residence. *See Ezell v. City of Chicago*, 651 F.3d 684, 701-04 (7th Cir. 2011) (noting that it is "a profoundly mistaken assumption" to assume "that the harm to a constitutional right is measured by the extent to which it can be exercised in another jurisdiction"). Defendants conceded that this might amount to an injury. *See* Tr. Oral Arg. at 23 ("Well, they may have an injury in that they can't get the handgun exactly there. But that's not

traceable to the law because the law would allow them to get the handgun as long as they got it from a dealer in their home state."). Although *Lane* held that the plaintiffs' injuries, if any, were caused by the unnamed FFLs and not the law at issue, this Court declines to apply similar reasoning. The sole reason that the Hansons must go through Sykes to complete their desired transaction with Mance is because the federal interstate handgun transfer ban requires them to do so. But for the federal interstate handgun transfer ban, Mance and the Hansons would have been able to complete their desired transaction. In other words, the Court's favorable ruling for Plaintiffs would redress Plaintiffs' injury. The Court finds that the Hansons have suffered a cognizable injury that is traceable to Defendants' enforcement of the federal interstate handgun transfer ban that would be redressed by the Court's favorable ruling. Accordingly, the Hansons have standing to bring the instant action. *See Lujan*, 504 U.S. at 560-61.

Next, Defendants argue that the Committee lacks standing because it cannot show that any of its members possess standing. Defs.' Br. Supp. Mot. Dismiss 17, ECF No. 16. As previously discussed, the Hansons are members of the Committee. Furthermore, the Court finds that the interests the Committee seeks to protect are germane to its purpose, and neither the claims asserted nor the relief requested requires the participation of individual members in the lawsuit. *See* Pls.' App. Supp. Mot. Summ. J. (Versnel Decl.), App. at 10-11, ECF No. 23. Thus, the Committee has associational standing to bring this action on behalf of its members. *See Ass'n of Am. Physicians & Surgeons*, 627 F.3d at 550.

Finally, the Court addresses Mance's standing. Defendants argue Mance has suffered no injury in fact. As stated above, Mance was unable to consummate the sale of handguns to the Hansons because of § 922(b)(3). The loss of a sale is clearly an injury to Mance in his own right, and

GRE19

a distributor such as Mance also has standing to assert the rights of third parties seeking access to his goods. *Carey v. Population Servs. Int'l*, 431 U.S. 678, 682-83 (1977); *see also Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1386 (2014) (holding that lost sales and damage to business reputation provide standing).

Further, Defendants' reliance on *Lane* in opposition to the Hansons' standing undermines their argument in opposition to Mance's standing. In *Lane*, the Fourth Circuit noted the individual firearms purchasers lacked standing because the federal interstate handgun transfer ban did "not apply to them but rather to the FFLs from whom they would buy handguns." 703 F.3d at 672. The *Lane* court concluded that the plaintiffs' reliance on the Supreme Court's decision in *Carey* was inapposite because the Supreme Court in *Carey* had before it a *distributor* of contraceptives, not individual purchasers, and concluded a distributor had standing to challenge restrictions placed on the sale of contraceptives. *Id.* The Fourth Circuit in *Lane* therefore concluded *Carey* did not apply because there were no FFLs, i.e. distributors, in the lawsuit. *Id.* Regardless of the Fourth Circuit's reasoning about the applicability of *Carey* on the standing of individual purchasers, it clearly indicated an FFL plaintiff who is "directly affected" by § 922(b)(3) would have standing. *Id.*

The facts in this case indisputably demonstrate Mance suffered an injury, in the form of losing specific business with the Hansons, that is traceable to the federal interstate handgun transfer ban, and a favorable ruling from this Court would provide redress. Thus, according to *Lane*, *Carey*, and general standing principles, Mance has standing. *See Lujan*, 504 U.S. at 560-61. Having established the standing of each of the plaintiffs, the Court now proceeds to the merits of the claim.[4]

---

[4] Defendants initially argued Mance lacked standing because he faced no imminent threat of prosecution. Defs.' Br. Supp. Mot. Summ. J. 16, ECF No. 16. However, Defendants later acknowledged that Mance would have a reasonable fear of prosecution if he were to sell handguns directly to the Hansons. Tr.

B.        **Cross Motions for Summary Judgment**

Neither party asserts there are genuine issues of material fact, therefore the Court focuses its analysis on the legal arguments presented by the parties. Here, Plaintiffs challenge the constitutionality of the federal interstate handgun transfer ban under the Second Amendment and the Due Process Clause of the Fifth Amendment. The Court analyzes the ban against both amendments in turn, beginning with the Second Amendment.

1.        Second Amendment

Plaintiffs challenge the federal interstate handgun transfer ban on its face, as applied in the context of handgun sales that do not violate any state or local laws, and as applied in the context of handgun sales where state or local laws require a license, pre-registration, or other form of approval to proceed with the sale. 2d Am. Compl. ¶ 36, ECF No. 33. "[F]acial and as-applied challenges have different substantive requirements." *Catholic Leadership Coal. of Tex. v. Reisman*, 764 F.3d 409, 425 (5th Cir. 2014) (citing *Doe v. Reed*, 561 U.S. 186, 194 (2010)). The Court will first address the facial challenge to the federal interstate handgun transfer ban. To prevail on a facial challenge, Plaintiffs must show that either no set of circumstances exists under which the law would be valid or that the statute lacks any plainly legitimate sweep. *United States v. Stevens*, 559 U.S. 460, 473 (2010); *Catholic Leadership Coal.*, 764 F.3d at 426.

---

Oral Arg. at 43-44 ("If he were to sell directly to the Hansons, yes, that would certainly implicate (b)(3). . . . We no longer contend that the law would not apply to Mr. Mance or that he doesn't have sufficient fear of prosecution."). "[I]t is not necessary that [a party] first expose himself to actual arrest or prosecution to be entitled to challenge a statute that he claims deters the exercise of his constitutional rights." *Steffel v. Thompson*, 415 U.S. 452, 459 (1974); *see also Int'l Soc'y for Krishna Consciousness of Atlanta v. Eaves*, 601 F.2d 809, 818 (5th Cir. 1979) (A justiciable controversy exists when "the plaintiff is seriously interested in disobeying, and the defendant seriously intent on enforcing, the challenged measure."). Thus, Defendants have abandoned this argument.

10

The Second Amendment provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. The Supreme Court has recognized that the Second Amendment confers an individual right to keep and bear arms. *See District of Columbia v. Heller*, 554 U.S. 570, 595 (2008). This right is not unlimited, however, and the Supreme Court acknowledged that some conditions may still be constitutional, such as "longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms." *Id.* at 626-27. In fact, the Supreme Court noted that this incomplete list of regulatory measures is "presumptively lawful." *Id.* at 627 n.26.

The Supreme Court has not set out an analytical framework for determining whether other firearms regulations comport with the Second Amendment. *See NRA*, 700 F.3d at 194 ("*Heller* did not set forth an analytical framework with which to evaluate firearms regulations in future cases."). To analyze challenges under the Second Amendment, the Fifth Circuit, along with its sister circuits, employs a two-step inquiry:

> the first step is to determine whether the challenged law impinges upon a right protected by the Second Amendment—that is, whether the law regulates conduct that falls within the scope of the Second Amendment's guarantee; the second step is to determine whether to apply intermediate or strict scrutiny to the law, and then to determine whether the law survives the proper level of scrutiny.

*Id.*; *see also United States v. Greeno*, 679 F.3d 510, 518 (6th Cir. 2012); *Heller v. District of Columbia*, 670 F.3d 1244, 1252 (D.C. Cir. 2011) (*Heller II*); *Ezell*, 651 F.3d at 701-04; *United States v. Chester*, 628 F.3d 673, 680 (4th Cir. 2010); *United States v. Reese*, 627 F.3d 792, 800-01 (10th Cir. 2010); *United States v. Marzzarella*, 614 F.3d 85, 89 (3d Cir. 2010); *but see United States v.*

11

15-10311.473

*Skoien*, 614 F.3d 638, 641-42 (7th Cir. 2010) (en banc) (forgoing the two-step framework to avoid the "levels of scrutiny quagmire," but applying intermediate scrutiny to a categorical restriction). In the first step, courts must look to whether the law "harmonizes with the historical traditions associated with the Second Amendment guarantee." *NRA*, 700 F.3d at 194. In essence, if the alleged burden at issue is consistent with longstanding, historic traditions of firearms restrictions, it "falls outside the Second Amendment's scope" and "passes constitutional muster." *See id.* at 195. Conversely, should the Court determine that the law burdens conduct that falls within the Second Amendment's scope, the Court must then apply the appropriate level of means-ends scrutiny. *Id.*

      a.     *Whether the Law Falls Within the Scope of the Second Amendment*

For the first step, the Court looks for any evidence of founding-era thinking that contemplated that interstate, geography-based, or residency-based firearm restrictions would be acceptable. *See Ezell*, 651 F.3d at 701-02 ("The answer [to the 'scope' question] requires a textual and historical inquiry into original meaning."); *see also McDonald v. City of Chicago*, 561 U.S. 742, 786 (2010). For example, in *NRA*, the Fifth Circuit found historic traditions of age restrictions for the possession of firearms dating back to the Revolution. *See* 700 F.3d at 204 n.17. The Fifth Circuit stated that "[t]he important point is that there is considerable historical evidence of age-and safety-based restrictions on the ability to access arms." *Id.* at 201-02. Likewise, in *Heller*, the Supreme Court illustrated examples of historical limitations on the right protected by the Second Amendment by noting that "the majority of the 19th-century courts to consider the question held that prohibitions on carrying concealed weapons were lawful under the Second Amendment or state analogues." 554 U.S. at 626 (citations omitted); *see also Heller II*, 670 F.3d at 1252.

GRE23

15-10311.474

Defendants list the earliest known state residency restrictions on the purchase or possession of firearms, with the earliest of these restrictions occurring in 1909.[5] *See* Defs.' App. Supp. Mot. Summ. J. Ex. 2, App. at 103, ECF No. 17-1. Defendants have not presented, and the Court cannot find, any earlier evidence of longstanding interstate, geography-based, or residency-based firearm restrictions. The Court need not require "a precise founding-era analogue," but these early twentieth century state residency restrictions do not date back quite far enough to be considered longstanding. *See NRA*, 700 F.3d at 196. While two-hundred years from now, restrictions from 1909 may seem longstanding, looking back only to 1909, today, omits more than half of America's history and belies the purpose of the inquiry. *See Heller*, 554 U.S. at 634-35 ("Constitutional rights are enshrined with the scope they were understood to have when the people adopted them, whether or not future legislatures or (yes) even future judges think that scope too broad."); *Peruta v. Cnty. of San Diego*, 742 F.3d 1144, 1175 n.21 (9th Cir. 2014) (*Heller* and *McDonald* made clear "the scope of the Second Amendment right depends not on post-twentieth century developments, but instead on the understanding of the right that predominated from the time of ratification through the nineteenth century."); *Ezell*, 651 F.3d at 702-03 ("[I]f the government can establish that a challenged firearms law regulates activity falling outside the scope of the Second Amendment right as it was understood at the relevant historical moment – [here, 1791] – then the analysis can stop there."). In the absence of any evidence of founding-era thinking that contemplated that interstate, geography-based, or residency-based firearm restrictions would be acceptable, the Court finds that the federal interstate handgun transfer ban burdens conduct that falls within the scope of the Second Amendment. Having

---

[5] In 1909, West Virginia amended its code to require a state license for the possession of firearms and other dangerous weapons. *See* Defs.' App. Supp. Mot. Summ. J. Ex. 2, App. at 103, ECF No. 17-1 (citing 1909 W. Va. Acts 394, 395-96).

found that the conduct at issue falls within the scope of the Second Amendment, the Court moves to step two.

### b.    *Whether to Apply Strict or Intermediate Scrutiny*

The Court must now determine the appropriate level of scrutiny to apply. Defendants argue that the federal interstate handgun transfer ban imposes only minimal burdens, so heightened scrutiny is not warranted. Defs.' Br. Supp. Mot. Summ. J. 27-28, ECF No. 16. Plaintiffs contend that because the ban targets all citizens, every handgun consumer is severely impacted by a restriction on the most preferred firearm in the nation for use in self-defense. *See Heller*, 554 U.S. at 628-29 (noting District of Columbia ban on handguns banned "the most preferred firearm in the nation to keep and use for protection of one's home and family."). They argue that the "trade in an article to which people have an enumerated, fundamental right cannot be the subject of reduced scrutiny." Pls.' Mem. Supp. Mot. Summ. J. 28, ECF No. 22.

In *NRA*, although the Fifth Circuit determined that age-restrictions were a longstanding, historic tradition, it moved to the second step "in an abundance of caution" and applied intermediate scrutiny. 700 F.3d at 204. The court reasoned that only intermediate scrutiny applied for three reasons: (1) an age qualification on commercial firearm sales was significantly different from a total prohibition on handgun possession; (2) the age restriction did not strike at the core of the Second Amendment by preventing 18-to-20-year-olds from possessing and using handguns for home defense because it was not a historical outlier; and (3) the restriction only had temporary effect because the targeted group would eventually age out of the restriction's reach. *Id.* at 205-07.

Here, Defendants contend that the Court need not engage in heightened scrutiny because any burden created by the federal interstate handgun transfer ban is "de minimis." Defs.' Br. Supp. Mot.

14

Summ. J. 27-30, ECF No. 16. Defendants rely on the Second Circuit's opinion in *United States v. Decastro*, 682 F.3d 160, 166-67 (2d Cir. 2012), which held that heightened scrutiny is reserved for regulations that "substantially" burden the Second Amendment right. Defs.' Br. Supp. Mot. Summ. J. 27-30, ECF No. 16; *see also* Tr. Oral Arg. at 46. Under this standard, a plaintiff may rebut the presumption that a longstanding regulation is presumptively lawful by showing that the regulation has more than a de minimis effect upon his right; "[a] requirement of newer vintage is not, however, presumed to be valid." *Heller II*, 670 F.3d at 1253. As discussed above, the federal interstate handgun transfer ban is not longstanding, making the de minimis standard inappplicable.[6] *See supra* Part III.B.1.a.

"A law that burdens the core of the Second Amendment guarantee—for example, 'the right of law-abiding, responsible citizens to use arms in defense of hearth and home'—would trigger strict scrutiny." *NRA*, 700 F.3d at 205 (quoting *Heller*, 554 U.S. at 635) (internal citation omitted). At its core, the Second Amendment protects *law-abiding*, *responsible* citizens. *Id.* at 206. Instead of limiting the federal interstate handgun transfer ban to a discrete class of people, it prevents all legally responsible and qualified individuals from directly acquiring handguns from FFLs in every state other than their state of residency and the District of Columbia.[7] *See Ezell*, 651 F.3d at 708 ("Here

---

[6] In addition, Defendants were unable to articulate precisely when to apply the de minimis standard within the Fifth Circuit. *See* Tr. Oral Arg. at 51-58.

[7] While it is technically true that individuals outside of the District of Columbia are also unable to directly purchase and take possession of handguns from a District of Columbia FFL, there appears to be only one FFL in the District of Columbia, and he does not possess inventory and only remains in business to receive firearms for District of Columbia residents who purchase firearms from FFLs outside of the District of Columbia in compliance with §§ 922(a)(3) and 922(b)(3). *See Lane*, 703 F.3d at 670-71. As a practical matter then, no one outside of the District of Columbia is deprived of the right to purchase a handgun from a District of Columbia retail FFL at this time. Post *Heller* however, should a District of Columbia FFL open for business, only District of Columbia residents could purchase and take delivery from him.

15

. . . the plaintiffs are the 'law abiding, responsible citizens' whose Second Amendment rights are entitled to full solicitude under *Heller*."). To obtain a handgun from an out-of-state FFL retailer, the federal interstate handgun transfer ban imposes substantial additional time and expense to those who desire to purchase one. Restricting the distribution channels of legal goods protected by the Constitution to a small fraction of the total number of possible retail outlets requires a compelling interest that is narrowly tailored. *See Carey*, 431 U.S. at 689; *Marzzarella*, 614 F.3d at 94 ("[I]nfringements on protected rights can be, depending on the facts, as constitutionally suspect as outright bans."). The Court, therefore, applies strict scrutiny—that is, the law must be narrowly tailored to be the least restrictive means of achieving a compelling government interest. *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 340 (2010).

c.    *Strict Scrutiny Analysis*

Defendants contend that the Government's interest in restricting out-of-state handgun purchases is to protect "public safety and permit[ ] States to regulate firearms traffic within their own borders." Defs.' Br. Supp. Mot. Summ. J. 32, ECF No. 16. They argue the federal interstate handgun transfer ban combats the "serious problem of individuals going across state lines to procure firearms which they could not lawfully obtain or possess in their own state and without the knowledge of their local authorities." Defs.' App. Supp. Mot. Summ. J. Ex. 1 (S. Rep. No. 89-1866 (1966)), App. at 19, ECF No. 17-1. Under the law, FFLs may transfer rifles and shotguns to nonresidents so long as the FFL and recipient meet in person and the transfer fully complies with the legal requirements of both states. 18 U.S.C. § 922(b)(3)(A). The prohibition on directly transferring firearms to nonresidents applies only to handguns. *See id.* § 922(b)(3). Defendants argue that Congress focused on handguns, as opposed to rifles and shotguns, because "[t]he evidence before [Congress] overwhelmingly

16

demonstrated that the handgun is the type of firearm that is principally used in the commission of serious crime." Defs.' Mot. at 7. Finally, Defendants proffer that Congress required interstate handgun transfers to take place through in-state FFLs as an attempt to limit circumvention of state handgun laws "by ensuring that transfers are made only by dealers who are well-acquainted with and required to follow a State's handgun laws, allowing States to monitor more effectively the enforcement of State gun laws by focusing on dealer compliance."[8] Defs.' Br. Supp. Mot. Summ. J. 37, ECF No. 16.

First, the Court agrees the Government's interest in preventing handgun crime is a compelling interest. *See United States v. Salerno*, 481 U.S. 739, 754 (1987); *NRA*, 700 F.3d at 208-09. The parties' dispute centers around whether regulating the interstate market is appropriately limited in this fashion. *See* Defs.' Br. Supp. Mot. Summ. J. 32-37, ECF No. 16; Pls.' Mem. Supp. Mot. Summ. J. 27-33, ECF No. 22. Defendants contend that these provisions were appropriately "designed to prevent the avoidance of State and local laws controlling firearms by the simple expediency of crossing a State line to purchase one." Defs.' Br. Supp. Mot. Summ. J. 34, ECF No. 16 (quoting H.R. Rep. No. 90-1577 (1968)). As discussed above, it is Defendants' burden to prove in this case that the federal interstate handgun transfer ban is narrowly tailored to achieve this goal. In essence, Defendants must prove that requiring the participation of an additional FFL in out-of-

---

[8] Defendants also advanced the argument that the Second Amendment does not protect the right of individuals to *sell* firearms. *See* Defs.' Br. Supp. Mot. Summ. J. 25, ECF No. 16. Though *Heller* endorsed laws that imposed conditions and qualifications on the commercial sale of firearms, a court must necessarily examine the nature and extent of an imposed condition to analyze its constitutionality. *Marzzarella*, 614 F.3d at 92 n.8. "If there were somehow a categorical exception for these restrictions, it would follow that there would be no constitutional defect in *prohibiting* the commercial sale of firearms. Such a result would be untenable under *Heller*." *Id.* (emphasis added). Accordingly, the Court finds that operating a business that provides Second Amendment services is generally protected by the Second Amendment, and prohibitions on firearms sales are subject to similar scrutiny.

state handgun purchases is narrowly tailored to the stated goals of reducing violent handgun crime, preventing those unable to lawfully possess handguns from obtaining them, and providing states notice of handgun sales to state residents. *See Citizens United*, 558 U.S. at 340.

To prove this restriction is necessary, Defendants point to the statistics identified by Congress when it enacted the 1968 Gun Control Act. *See* Defs.' Br. Supp. Mot. Summ. J. 3-6, 34-35, ECF No. 16. In targeting the handgun for heightened restrictions, Congress found that 70% of murders were committed using a handgun, and 78% of firearm-related homicides of police officers were committed with a handgun. *Id.* at 34. Defendants have provided updated figures that largely mirror these statistics. *See id.* at 35 n.14. It is undisputed that these numbers supported, and perhaps continue to support, taking steps to address the use of handguns by the irresponsible.[9] These statistics, however, do not speak to the need for, and the reasonableness of, requiring the participation of an additional in-state FFL in all transactions involving out-of-state handguns.

Defendants appear to rely on the information provided by the Senate Report to the 1968 Gun Control Act to support the current need for the federal interstate handgun transfer ban. *See generally id.* As stated above, Congress determined that prohibited individuals easily evaded local firearms restrictions by simply crossing state lines. In support, the Senate Judiciary Committee investigation provided that in suburban Maryland, 58% of one firearms dealer's handgun sales were to District of

---

[9] Although the law creates a distinction between the transfer of handguns and the transfer of rifles and shotguns, Congress did consider statistics showing significant harm caused by rifles and shotguns, in addition to that of handguns. In fact, distinguishing between handguns and long guns was one of the controversial aspects of the statute. S. Rep. No. 89-1866 (1966), App. at 62, ECF No. 17-1. Congress saw evidence of "a substantial misuse of rifles and shotguns," including "that of the total number of firearms murders each year, some 30 percent [were] perpetrated by persons armed with rifles and shotguns." *Id.* at 63, 54. In spite of these statistics, Congress decided not to disturb transfers of rifles and shotguns to the same extent as handguns. *See* 18 U.S.C. § 922(b)(3); 27 C.F.R. § 478.96(c)(1). These types of conclusions regarding conflicting evidence are generally left to Congress. *Turner Broad. Sys., Inc. v. FCC*, 520 U.S. 180, 199 (1997).

Columbia residents and that subsequent criminal record checks determined that 40% of those purchasers had criminal records. *Id.* at 4. The investigation also revealed that a separate dealer made 40% of his handgun sales to District of Columbia residents and 23% of those sales were to purchasers with criminal records. *Id.*

These statistics notwithstanding, Defendants fail to provide reasonably *current* figures to show the federal interstate handgun sale ban is narrowly tailored. Strict scrutiny is a demanding standard that requires Defendants to show the governmental interest to be compelling and the associated regulation narrowly tailored to serve that interest. *See Brown v. Entm't Merchs. Ass'n*, 131 S. Ct. 2729, 2738 (2011). To be narrowly tailored, the curtailment of constitutional rights must be actually necessary to the solution. *Id.* The principal purpose in enacting the 1968 Gun Control Act was to curb crime by keeping "firearms out of the hands of those not legally entitled to possess them because of age, criminal background, or incompetency." *Huddleston v. United States*, 415 U.S. 814, 824 (1974); *see also Heller*, 554 U.S. at 626-27 (noting Supreme Court was not "cast[ing]doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill."). Congress intended to accomplish this with the federal interstate handgun transfer ban, which would provide states with notice of those who purchased handguns *and* "prevent the avoidance of State and local laws controlling firearms by the simple expediency of crossing a State line to purchase one." Defs.' Br. Supp. Mot. Summ J. 34, ECF No. 16.

When the federal interstate handgun transfer ban was enacted in 1968, an instant electronic background check system did not exist. In 1993, Congress sought to strengthen the ability of all FFLs to avoid transferring firearms to persons who could not legally posses them under state or federal law by amending the 1968 Gun Control Act with the "Brady Act." *See* Brady Handgun Violence

Prevention Act, Pub. L. No. 103-159, 107 Stat. 1536 (1993). Pursuant to the Brady Act, before an FFL may sell or deliver a firearm to a non-FFL, he must complete a criminal background check through the National Instant Criminal Background Check System ("NICS") to ensure the purchaser is legally entitled to obtain and possess the firearm. 18 U.S.C. § 922(t). States may also create a Point of Contact ("POC"), who acts as a liaison to NICS, to run the background check and receive notice of anticipated firearms purchases by its citizens. *See* 28 C.F.R. §§ 25.1-.2, 25.6(d). In other words, to complete a background check, the FFL contacts either (1) the state POC, if there is one; or (2) NICS, if the state has not designated a POC. *See id.* Current law therefore ensures potential purchasers can legally acquire and possess a firearm under state and federal law, and those states that desire to receive notice of firearms purchased by its citizens simply establish a POC.

Obviously, none of this infrastructure existed in 1968. Yet, in this case, it appears Defendants rely on statistics from the 1968 Senate Report to support the continued need for an in-state FFL in every out-of-state handgun transaction. *See, e.g.*, Tr. Oral Arg. at 50. ("[E]xtensive investigations over several years *before* [Congress] passed the Gun Control Act in 1968 . . . revealed a serious problem of individuals going across state lines to obtain firearms that the could not lawfully obtain or possess in their own state or residence and without the knowledge of their local authorities.") (emphasis added).

This argument fails to take into account the current version of the 1968 Gun Control Act, nor does it address how simply crossing state lines under the modern regime can circumvent state law. *See Shelby Cnty. v. Holder*, 133 S. Ct. 2612, 2619 (2013) (noting current burdens on constitutional rights "must be justified by current needs"); *see also NRA*, 700 F.3d at 209 (Evidence demonstrates that the link "between the ban and its objective has *retained* its reasonableness.") (emphasis added).

20

In *NRA*, the Fifth Circuit found reasonably current data supported the continued reasonable fit between the federal age restriction on the acquisition of handguns and the Government's interest. *NRA*, 700 F.3d at 209 (relying on 1999 statistics). In this case, Defendants provided recent data to support their argument that concealable handguns remain involved in homicides at the same significant rate as occurred in 1968. *See* Defs.' Br. Supp. Mot. Summ. J. 34 n.14, ECF No. 16. It may be that the federal interstate handgun transfer ban remains justified because the Brady Act fails to prevent prohibited individuals from crossing state lines to illegally acquire and possess handguns they otherwise would not obtain, and the Brady Act fails to provide notice to those states who desire it.[10] However, Defendants have failed to carry their burden to show the federal interstate handgun transfer ban is narrowly tailored to achieve the intended objective under current law. *See Shelby Cnty.*, 133 S. Ct. at 2627 (noting formula affecting constitutional rights must be appropriate "in light of current conditions"); *Annex Books, Inc. v. City of Indianapolis*, 581 F.3d 460, 463 (7th Cir. 2009) (stating items specifically protected by the Constitution can be restricted only "by evidence, and not just asserted"); *see also Edenfield v. Fane*, 507 U.S. 761, 770-71 (1993) (holding that the government cannot rely on speculation or conjecture to support government interest).

---

[10] The Court notes the findings Congress made in the NICS Improvements Act. *See* NICS Improvement Amendments Act of 2007, Pub. L. No. 110-180, § 2, 122 Stat. 2559 (2008). The findings underscore two tragedies that occurred after NICS failed to stop certain firearm purchases. *Id.* Congress enacted the NICS Improvement Act to close loopholes in NICS and ensure that those failures did not occur again. *Id.* While two tragedies constitute two too many, they are not enough to conclude that the Brady Act is not working. From its inception on March 1, 1994, through December 31, 2010, approximately 2.1 million attempts-to-purchase firearms were blocked under the Brady Act. *See* Bureau of Justice Statistics, *Background Checks for Firearm Transfers, 2010-Statistical Tables*, U.S. Dep't of Justice 4 (Table 1) (Feb. 2013), http://www.bjs.gov/content/pub/pdf/bcft10st.pdf. Even if the Brady Act and the NICS Improvements Act are not as effective as they currently appear, Defendants have not met their burden to show the Court that the federal interstate handgun transfer ban is still necessary when enforced in addition to those Acts.

21

The evidence and the law before the Court indicate FFLs, wherever they may be located, are required to conduct background checks under current law before they sell or deliver any firearm to a non-FFL. *See* 18 U.S.C. § 922(b)(3). These checks identify both federal and state disabilities. *See* 18 U.S.C. § 922(t). While Defendants argue that state handgun laws are far more diverse and complex than state laws relating to rifles and shotguns, they do not provide relevant evidence that the ban is necessary to continue serving the goal of complying with state law, much less evidence that it is narrowly tailored to do so.[11] Nor do Defendants address why the current POC system is insufficient to provide notice to states that desire it. The current law relating to rifles and shotguns provides an example of a narrowly tailored law, especially when it is taken together with instant electronic background checks, face-to-face meeting requirements, state POCs, and published compilations of state and local firearms laws.[12] In short, the current statutory scheme presents less

---

[11] The Director of the Bureau of Alcohol, Tobacco, Firearms, and Explosives is required to annually furnish FFLs with an updated compilation of state laws and published ordinances, which is necessary for them to ensure that their firearms transactions comport with state and local law. *See* 27 C.F.R. § 478.24.

[12] FFLs must also verify and conform to numerous state firearms laws for rifles and shotguns. For example, Texas has no laws restricting semi-automatic assault weapons, whereas California bans most semi-automatic assault weapons and .50 caliber rifles and prohibits the sale and transfer of large capacity magazines. *See* Cal. Penal Code § 30605 (West 2014). A Texas FFL must ensure that a Sacramento, California resident who purchases a rifle is legally entitled to do so under federal, Texas, California, and Sacramento law. *Compare* Tex. Loc. Gov't Code § 229.001(West 2013) (limiting Texas municipalities' authority to locally regulate firearms) *with* Cal. Const. art. XI, § 7 (allowing local authorities in California, including cities and counties, to regulate firearms). Similarly, a non-Texas FFL must ensure that a Texas resident who purchases a handgun is legally entitled to do so under federal law and the laws of both states. While a California FFL in San Diego might have to research the local handgun restrictions in place for a Sacramento, California resident purchaser, some 500 miles to the north, nothing prevents an out-of-state FFL from Reno, Nevada, from conducting the same research to ensure that a handgun transaction with a Sacramento resident, some 100 miles away, comports with federal, Nevada, California, and Sacramento restrictions. Under current law, an FFL is not authorized to transfer any firearm to anyone until the state or federal authority confirms the transfer is legally permitted under state and federal law. *See* 18 U.S.C. § 922(t).

restrictive alternatives to achieve the goals that Congress identified in 1968, rendering the federal interstate handgun transfer ban not narrowly tailored.

Finally, Defendants argue that states do not have the ability to prosecute FFLs whose sales are made out of state and violate that state's law. *Id.* at 36-37 (quoting H.R. Rep. No. 99-495 (1986), *reprinted in* 1986 U.S.C.C.A.N. 1327, 1335); *see also* Tr. Oral Arg. at 68. But, "the existence of congressional findings is not sufficient, by itself, to sustain the constitutionality" of certain legislation. *See United States v. Morrison*, 526 U.S. 598, 614 (2000) (holding that simply because Congress concluded that a particular activity substantially affected interstate commerce did not necessarily make it so). There already exists a federal statute that imposes criminal liability on FFLs who sell illegal firearms in another state under 18 U.S.C. § 922(b)(3), and Defendants do not explain why a *state* could not prosecute that out-of-state FFL if he violates state law as well. It appears that Defendants rely on the fact that Congress *believed* that states would be unable to prosecute an out-of-state FFL who sold to one of their residents in violation of state law; thus, requiring the participation of the in-state FFL would allow states to prosecute such illegal firearms sales. The Court agrees that states indeed have an interest in prosecuting such crimes but fails to see how a state would be unable to prosecute out-of-state FFLs that illegally sell guns to their citizens. While Congress's findings indicated that states could not prosecute rogue out-of-state FFLs, nothing in the findings, and nothing presented by Defendants here, supports such a conclusion. *See Morrison*, 526 U.S. at 614 (stating that determining whether congressional findings are sufficient to sustain congressional action is a matter for the judiciary).

Based on the foregoing, the Court concludes that Defendants have not shown that the federal interstate handgun transfer ban is narrowly tailored to be the least restrictive means of achieving the

Government's goals under current law. The federal interstate handgun transfer ban is therefore unconstitutional on its face.

The Court further finds, in the alternative, the federal interstate handgun transfer ban is unconstitutional when applied to the facts of this case. The essence of an as-applied challenge is the claim that the manner in which a statute was applied to the plaintiff in a particular circumstance violated the Constitution. *See In re Cao*, 619 F.3d 410, 434 (5th Cir. 2010); *Khachaturian v. Fed. Election Comm'n*, 980 F.2d 330, 331 (5th Cir. 1992). Texas law allows the sale of handguns to residents of other states, and the District of Columbia does not prohibit the importation of firearms as long as they are registered. *See* D.C. Code § 7-2502.01(a) (2014). Further, based on the undisputed facts in this case, the Hansons are fully qualified under federal, District of Columbia, and Texas law to purchase and possess handguns, and the Hansons each identified a handgun in Mance's inventory that is legal for them to possess and bring into the District of Columbia. As discussed above, requiring that the Hansons pay additional costs and fees and wait until they return to the District of Columbia to retrieve their firearms from Sykes amounts to a regime that is not narrowly tailored to achieve the Government's compelling interest. Accordingly, the federal interstate handgun transfer ban is unconstitutional as applied to Plaintiffs.

    *d.     Intermediate Scrutiny Analysis*

Even if the federal interstate handgun transfer ban merits only intermediate scrutiny, the ban still fails. To withstand intermediate scrutiny, Defendants must show that the law is substantially related to an important government interest. *See, e.g.*, *Nat'l Rifle Ass'n of Am., Inc. v. McCraw*, 719 F.3d 338, 348-49 (5th Cir. 2013). The law need not employ the least restrictive means to achieve its goal, but the law must be reasonably adapted to its public safety objective to pass constitutional

GRE35

muster. *Id.* at 349. A regulation may not be sustained if it provides only ineffective or remote support for the interest. *Edenfield*, 507 U.S. at 770-71. Instead, "there must be an indication that the regulation will alleviate the asserted harm to a material degree." *Id.*

In *NRA*, the Fifth Circuit applied a means-ends analysis to determine that the federal law prohibiting FFLs from selling handguns to 18-to-20-year-olds survived intermediate scrutiny. 700 F.3d at 208-09. Specifically, the court found that the Government had shown that there was a problem of young persons under 21, who were immature and prone to violence, easily accessing handguns, which facilitate violent crime, primarily by way of FFLs. *Id.* at 208. Therefore, the court found that restricting the ability of young persons under 21 to purchase handguns from FFLs was an appropriate and constitutional response. *Id.* Applying intermediate scrutiny in *McCraw*, the Fifth Circuit found that a Texas law prohibiting 18-to-20-year-olds from publicly carrying handguns was constitutional because (1) it had a similarly "narrow ambit" as the federal law challenged in *NRA*; (2) it targeted the "discrete category" of 18-to-20-year-olds; and (3) the Texas law restricted only the carrying of one type of guns—handguns. *McCraw*, 719 F.3d at 349. Accordingly, the law was appropriately tailored. *Id.*

The federal interstate handgun transfer ban is unique compared to other firearms restrictions because it does not target certain people (such as felons or the mentally ill), conduct (such as carrying firearms into government buildings or schools), or distinctions among certain classes of firearms (such as fully automatic weapons or magazine capacity). Instead, the federal interstate handgun transfer ban targets the entire national market of handgun sales and directly burdens law-abiding, responsible citizens who seek to complete otherwise lawful transactions for handguns. *See Moore v. Madigan,* 702 F.3d 933, 940 (7th Cir. 2012) (stating government must make a "strong showing"

where the challenged restriction curtails "the gun rights of the entire law-abiding adult population"). Again, Defendants have failed to carry their burden to show how the federal interstate handgun transfer ban alleviates, in a material way, the problem of prohibited persons obtaining handguns simply by crossing state lines and depriving states of notice that they have under the amended version of the 1968 Gun Control Act.

It may be that the federal interstate handgun transfer ban provides a reasonable fit to prevent prohibited individuals from crossing state lines to illegally acquire and possess handguns they otherwise would not obtain, even in light of the Brady Act's creation of NICS/POC requirements. In this case, however, Defendants have failed to carry their burden to show the federal interstate handgun transfer ban is a reasonable fit to achieve the intended objective. *See Annex Books*, 581 F.3d at 463; *see also Edenfield*, 507 U.S. at 770-71. Nor have Defendants shown a continued problem with policing out-of-state FFLs. By failing to provide specific information to demonstrate the reasonable fit between this ban and illegal sales and lack of notice in light of the Brady Act amendments to the 1968 Gun Control Act, the ban is not substantially related to address safety concerns. Thus, even under intermediate scrutiny, the federal interstate handgun transfer ban is unconstitutional on its face.

Moreover, the federal interstate handgun transfer ban does not survive intermediate scrutiny when applied to the facts of this case. The undisputed facts indicate that the Hansons would otherwise have been legally permitted to possess the handguns that they selected from Mance and bring them into the District of Columbia. *See* 2d Am. Compl. ¶¶ 26, 28, ECF No. 33. As law-abiding, responsible citizens, the Hansons likely do not pose the threat to public safety that motivated Congress to enact the federal interstate handgun transfer ban. Requiring that the Hansons pay

26

GRE37

additional costs and fees and wait until they return to the District of Columbia to retrieve their firearms from Sykes amounts to a regime that is not substantially related to the Government's stated goal. *See Shelby Cnty.*, 133 S. Ct. at 2619 ("[C]urrent burdens must be justified by current needs."). Therefore, the federal interstate handgun transfer ban is unconstitutional as applied to Plaintiffs.

2.    Due Process Clause of the Fifth Amendment

Plaintiffs contend that, because the laws discriminate based on residence, Defendants' enforcement of the federal interstate handgun transfer ban violates Plaintiffs' right to equal protection of the laws guaranteed by the Fifth Amendment's Due Process Clause. 2d Am. Compl. ¶¶ 39-40, ECF No. 33. The Due Process Clause of the Fifth Amendment provides, in relevant part: "No person shall . . . be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. The Supreme Court has consistently held that the Due Process Clause contains an equal protection component, which prohibits the United States from discriminating between individuals or groups. *See, e.g.*, *Washington v. Davis*, 426 U.S. 229, 239 (1976); *Bolling v. Sharpe*, 347 U.S. 497, 499 (1954).

"[E]qual protection analysis requires strict scrutiny of a legislative classification only when the classification impermissibly interferes with the exercise of a fundamental right or operates to the peculiar disadvantage of a suspect class." *Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 312 (1976). Here, the federal interstate handgun transfer ban interferes with the exercise of a fundamental right. The Supreme Court has also held that strict scrutiny is required where the challenged classification impinges on residency. *See Mem'l Hosp. v. Maricopa Cnty.*, 415 U.S. 250, 254-64 (1974) (holding that a challenge to a state durational-residency requirement to receive free, non-emergency medical care merited strict scrutiny, and the requirement was unconstitutional); *see also Att'y Gen. of N.Y.*

27

*v. Soto-Lopez*, 476 U.S. 898 (1986). The Supreme Court applied strict scrutiny in situations where *state* laws discriminated against non-residents, and those cases involved benefits offered by the state, not constitutional rights. *See id.*; *Mem'l Hosp.*, 415 U.S. at 254. Here, the *federal* law not only creates a discriminatory regime based on residency, but it also involves access to the constitutional guarantee to keep and bear arms. Based on the strict scrutiny analysis above, the Court finds that the federal interstate handgun transfer ban also violates the Due Process Clause of the Fifth Amendment to the United States Constitution. *See supra* Part III.B.1.c.

## IV.     CONCLUSION

Based on the foregoing, it is **ORDERED** that Defendants' Motion to Dismiss for lack of standing (ECF No. 15) is **DENIED**. It is **FURTHER ORDERED** that Plaintiffs' Motion for Summary Judgment (ECF No. 21) is **GRANTED**, and Defendants' Motion for Summary Judgment (ECF No. 15) is **DENIED**.

Accordingly, the Court **DECLARES** that 18 U.S.C. § 922(a)(3), 18 U.S.C. § 922(b)(3), and 27 C.F.R. § 478.99(a) are **UNCONSTITUTIONAL**, and Defendants are **ENJOINED** from enforcing these provisions. The Court will issue its final judgment separately.

**SO ORDERED** on this **11th** day of **February, 2015**.

Reed O'Connor

UNITED STATES DISTRICT JUDGE

28

15-10311.490

# Second Amended Complaint

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| FREDRIC RUSSELL MANCE, JR., TRACEY AMBEAU HANSON,  ANDREW HANSON, and CITIZENS COMMITTEE FOR THE RIGHT TO KEEP AND BEAR ARMS, | § § § § | Case No. 4:14-CV-00539-O |
| | § | SECOND AMENDED COMPLAINT |
| Plaintiffs, | § § | |
| v. | § § | |
| ERIC HOLDER, Attorney General of the United States, and B. TODD JONES, Director, Bureau of Alcohol, Tobacco, Firearms & Explosives, | § § § § § | |
| Defendants. | § § § | |

## SECOND AMENDED COMPLAINT

**COME NOW** the Plaintiffs, Fredric Russell Mance, Jr., Tracey Ambeau Hanson,

Andrew Hanson, and Citizens Committee for the Right to Keep and Bear Arms, by and through

undersigned counsel, and complain of the Defendants as follows:

### INTRODUCTION

The Supreme Court has recognized that the handgun is the quintessential self-defense arm

in the United States, the possession of which is a fundamental right guaranteed by the Second

Amendment. Federal law, however, defeats the formation of a national market for handguns.

Americans are free to purchase rifles and shotguns across state lines, so long as those

transactions comply with the laws of the seller's and purchaser's states. But under federal law, no

American may lawfully purchase a handgun outside his or her state of residence. This prohibition

plainly reduces competition, raises prices, and limits consumers' choice in the handgun market.

15-10311.446

Ostensibly, the federal interstate handgun prohibition serves an anti-circumvention purpose, securing the federal interest in having firearm consumers follow the laws of their home states. But several states do not object to—and even welcome—interstate handgun sales. Federal law with respect to interstate rifle and shotgun sales provides a ready example of a more carefully tailored alternative, prohibiting sales that violate state law—and permitting those that do not. There is no need to criminalize the entire interstate handgun market. Plaintiffs, firearm retailers, and consumers, thus seek declaratory and injunctive relief against that practice.

## THE PARTIES

1.      Plaintiff Fredric Russell Mance, Jr., is a citizen of the United States and a resident of Texas. Mance holds a Federal Firearms License ("FFL"), pursuant to which he retails handguns in Arlington, Texas.

2.      Plaintiff Tracey Ambeau Hanson is a citizen of the United States and a resident of the District of Columbia. She is married to Plaintiff Andrew Hanson.

3.      Plaintiff Andrew Hanson is a citizen of the United States and a resident of the District of Columbia. He is married to Plaintiff Tracey Ambeau Hanson.

4.      Plaintiff Citizens Committee for the Right to Keep and Bear Arms ("the Committee") is a membership association organized under the laws of the State of Washington, with its principal place of business in Bellevue, Washington, dedicated to promoting the benefits of the right to bear arms. The Committee's non-profit status is recognized under Section 501(c)(4) of the Internal Revenue Code. The Committee has approximately 525,000 members throughout the United States, including in Texas. Fredric Mance, Tracey Ambeau Hanson, and

Andrew Hanson are members of the Committee. The Committee brings this action on behalf of its members and supporters, who sell and purchase firearms throughout the United States.

5.      Defendant Eric H. Holder, Jr. is sued in his capacity as the Attorney General of the United States. As Attorney General, Holder is responsible for executing and administering laws, customs, practices, and policies of the United States, and is presently enforcing the laws, customs, practices, and policies complained of in this action.

6.      Defendant B. Todd Jones is sued in his capacity as the Director of the Bureau of Alcohol, Tobacco, Firearms and Explosives ("BATFE"). As Director of BATFE, Jones is responsible for executing and administering laws, customs, practices, and policies of the United States, and is presently enforcing the laws, customs, practices, and policies complained of in this action.

JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343, and 2201.

8.      Venue lies in this Court pursuant to 28 U.S.C. § 1391, as this is the District and Division in which a substantial part of the events or omissions giving rise to the claim occurred and are occurring, and in which Plaintiff Mance resides.

STATEMENT OF FACTS

*i.      The Federal Regulatory Regime*

9.      Title 18 U.S.C. § 922(a)(3) forbids individuals from transporting into or receiving in their state of residence, any firearm acquired outside that state since December 16, 1968, except for firearms acquired by bequest or intestate succession, or pursuant to a purchase from a

3

federally-licensed dealer that complies with 18 U.S.C. § 922(b)(3). For purposes of this provision, the District of Columbia is a "state." 18 U.S.C. § 921(a)(2).

10.    Title 18 U.S.C. § 922(b)(3) and 27 CFR § 478.99 bar licensed federal firearms dealers from selling firearms to individuals who do not reside within the state in which a dealer's place of business is located.

11.    Section 922(b)(3)'s prohibition contains an exemption, allowing a dealer to sell rifles and shotguns to residents of states where the dealer does not maintain a place of business,

> if the transferee meets in person with the transferor to accomplish the transfer, and the sale, delivery, and receipt fully comply with the legal conditions of sale in both such States (and any licensed manufacturer, importer or dealer shall be presumed, for purposes of this subparagraph, in the absence of evidence to the contrary, to have had actual knowledge of the State laws and published ordinances of both States) . . . .

12.    Accordingly, while consumers may lawfully purchase rifles and shotguns outside their state of residence, consumers may only take delivery of purchased handguns from a federal firearms licensee in the state wherein they reside. Owing to Section 922(b)(3), a handgun consumer wishing to purchase a handgun from a dealer outside his or her home state must arrange and pay for the out-of-state dealer to ship the handgun to an in-state dealer, who would then complete the sale.

13.    Not all dealers are willing to perform interstate transfer services. Those that do typically charge a fee for that service, as they cannot remain in business by transferring someone else's inventory to consumers, free of charge.

14.    No package delivery service in the United States ships handguns free of charge. The shipment of handguns, like that of any other item, requires the payment of a fee to cover the shipper's cost of doing business and profit.

GRE43

15-10311.449

15. "A . . . licensed dealer shall not sell . . . any firearm to any person, other than another licensee, unless the licensee records the transaction on a firearms transaction record, Form 4473 . . . ." 27 CFR § 478.124(a). Question 13 on Form 4473, which is directed at the consumer, asks "What is your State of residence (*if any*)? _____."

16. Defendants instruct firearm dealers to not complete a Form 4473, to refrain from calling in a prospective firearm consumer for a required background check, and to discontinue any

retail firearms transaction, if it plainly appears that the prospective firearm consumer is not legally qualified to complete the transaction.

   ii.   *The Texas Regulatory Regime*

17. Texas law does not forbid the sale of handguns to people residing outside of Texas.

   iii.   *The District of Columbia Regulatory Regime*

18. The District of Columbia requires that all firearms be registered, D.C. Code § 7-2502.01(a), but does not prohibit the importation of firearms. When individuals seek to bring firearms into the District of Columbia that they had previously, lawfully purchased while residing elsewhere, they need only provide notice and seek registration within 48 hours of importation.

19. When District of Columbia residents purchase firearms, "[a]n application for a registration certificate shall be filed (and a registration certificate issued) prior to taking possession of a firearm from a licensed dealer . . . ." D.C. Code § 7-2502.06(a). This law applies generally to rifles, shotguns, and handguns. The District of Columbia utilizes a single form, PD-219, that serves as the application to register any type of firearm, without distinction between

handguns and long guns, and which serves as the registration certificate when stamped "APPROVED" and labeled with a registration number.

20.     Since federal law does not prohibit the purchase of rifles and shotguns across state lines, District of Columbia residents routinely purchase those items from federally-licensed dealers outside the District, and take delivery of such firearms directly from those dealers upon presenting them with the approved District of Columbia registration certificates for the purchased firearms.

21.     District of Columbia law specifically allows a handgun buyer to transport handguns "from the place of purchase to his or her home." D.C. Code § 22-4505(a)(6). A handgun buyer must "[o]btain assistance necessary to complete the [registration] application by presenting the firearm registration application to a firearms dealer licensed under federal law . . . (2) [l]ocated outside the District if the firearm is purchased outside the District." D.C.M.R. § 24-2320.3(b)(2). Following approval, the handgun purchaser must

> Present the approved firearm registration application to the dealer licensed under federal law or, if federal law such as 18 U.S.C. § 922 prohibits the dealer from delivering the pistol to the applicant because the dealer is not within the District of Columbia, have that firearms dealer transport the pistol to a dealer located within the District, where the applicant will take delivery of the pistol.

D.C.M.R. § 24-2320.3(f).

*iv.     The Federal Interstate Handgun Sales Ban's Impact on Plaintiffs*

22.     The Committee's members include law-abiding, responsible Americans throughout the United States who desire to, and do, purchase handguns for traditional lawful purposes, including self-defense. Some of the Committee's members reside in states that, like the District of Columbia, do not prohibit purchasing handguns out of state. Some of the Committee's

members also reside in states that, like the District of Columbia, require a license or pre-registration to purchase handguns. But for the federal interstate handgun transfer ban, Committee members would purchase handguns from dealers located outside their state of residence. The federal interstate handgun transfer ban thus frustrates these intended sales. To the extent that Committee members do purchase handguns, the federal interstate handgun ban limits their choices as consumers, harms competition in the market, and raises prices, owing both to the fact that in-state dealers are shielded from competition by a national handgun market, and to the shipping and transfer fees that are incurred in the course of interstate handgun sales solely as a direct result of the federal interstate handgun transfer ban. The Committee brings this action on behalf of these members.

23.     The Committee's members include law-abiding, responsible Americans throughout the United States who desire to, and do, sell handguns for traditional lawful purposes, including self-defense. Some of these Committee members sell handguns in states that do not forbid the sale of handguns to non-residents. But for the federal interstate handgun transfer ban, Committee members would sell handguns directly to consumers outside the state in which they transact business. The federal interstate handgun transfer ban thus frustrates these intended sales. To the extent that Committee members do sell handguns with the expectation that they would be owned by consumers outside the sellers' states, the federal interstate handgun ban makes these sales less competitive, as the ban requires that handguns be shipped and then transferred through a second dealer. The Committee brings this action on behalf of these members as well, who in turn, would assert not only their rights, but the rights of their consumers throughout the United States.

24.     Mance resides in Texas, and transacts his firearms retailing business in Texas. He would sell handguns directly to consumers residing in other states, and in the District of Columbia, to the extent lawful under state and District law, but refrains from doing so because that conduct is prohibited by the federal interstate handgun transfer ban.

25.     Mance reasonably fears arrest, prosecution, incarceration, and fine were he to violate the law. Accordingly, when handgun consumers residing outside Texas approach Mance about purchasing handguns from him, he declines to engage in those sales, and instead, offers only to ship the consumers' desired handguns to dealers in their states or the District of Columbia for transfer there. Compliance with the federal interstate handgun transfer ban thus makes Mance's handguns more expensive for these out-of-state consumers, to say nothing of the delay inherent in completing such transactions. The federal interstate handgun ban costs Mance sales, and violates his Second Amendment rights and those of his out-of-state customers. Mance brings this action on his own behalf, and on behalf of his out-of-state handgun customers, including, but by no means limited to, the Hansons.

26.     The Hansons are fully qualified under federal, District of Columbia, and Texas law to purchase and possess handguns.

27.     On June 21, 2014, the Hansons visited Mance at his place of business in Arlington, Texas, as the Hansons are each in the market for the purchase of handguns.

28.     The Hansons each identified a handgun in Mance's inventory that is legal for them to possess in Washington, D.C, and which each would have purchased from Mance directly, and which Mance would have sold them directly, if only it were legal to do so.

29.     Because the Hansons do not reside in Texas, and do not wish to violate federal law, they would not take delivery of a handgun from Mance, nor would they bring a handgun purchased directly outside of Washington, D.C. to their home. Nor would the Hansons make any false statement on a Form 4473.

30.     Mance would not transfer any handguns to Tracey or Andrew Hanson, because doing so would violate the federal interstate handgun transfer ban.

31.     In the District of Columbia, where the Hansons reside, only one federally-licensed firearms dealer, Charles Sykes, is currently in the business of transferring handguns purchased at retail to District residents. Sykes carries no inventory himself, but charges $125 per transfer for handguns received from other dealers. Thus, the federal interstate handgun transfer ban increases the cost of handgun purchases by District of Columbia residents by $125, plus the costs of shipping the handguns to Sykes from other dealers.

32.     Rather than violate the law, or have the handguns shipped at their expense for transfer, at their expense, through Sykes, the Hansons and Mance agreed to refrain from completing any handgun transfers unless it became legal for the Hansons to take delivery of the handguns from Mance. They memorialized that intent by completing, in each other's presence as required by District of Columbia law, the District of Columbia's PD-219 forms. Mance verified that the Hansons' credit card would be valid to complete the purchases, but no money, or firearms, changed hands.

33.     But for the federal interstate handgun transfer ban, the Hansons would directly purchase the handguns from Mance.

GRE48

FIRST CLAIM FOR RELIEF
U.S. CONST. AMEND. II – THE RIGHT TO KEEP AND BEAR ARMS

34.     Paragraphs 1 through 33 are incorporated as though fully stated herein.

35.     The Second Amendment guarantees individuals a fundamental right to possess handguns for self-defense.

36.     Defendants' enforcement of 18 U.S.C. § 922(b)(3) and 27 CFR § 478.99, banning and otherwise burdening sale of and access to handguns, violates Plaintiffs' Second Amendment rights, (1) facially; (2) as applied in the context of handgun sales that do not violate any state or local laws; and (3) as applied in the context of handgun sales where state or local laws require a license, pre-registration, or other form of state or local governmental approval to proceed with the handgun sale.

37.     Defendants' enforcement of 18 U.S.C. § 922(a)(3) violates Plaintiffs' Second Amendment rights, when applied to prohibit individuals complying with all other laws, from bringing into their home state handguns acquired from federally-licensed dealers in another state.

SECOND CLAIM FOR RELIEF
U.S. CONST. AMEND. V – DUE PROCESS CLAUSE (EQUAL PROTECTION)

38.     Paragraphs 1 through 37 are incorporated as though fully stated herein.

39.     Title 18, U.S.C. §§ 922(a)(3) and (b)(3), and 27 CFR § 478.99 ban the sale and keeping of handguns to otherwise qualified individuals solely on account of their residence, while allowing other equally-qualified individuals to purchase and keep the same handguns.

40.     Defendants' enforcement of these laws violates Plaintiffs' right to equal protection of the laws guaranteed under the Fifth Amendment's Due Process Clause.

15-10311.455

PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that judgment be entered in their favor and against Defendants as follows:

1.  Permanently enjoining Defendants, their officers, agents, servants, employees, and all persons in active concert or participation with them who receive actual notice of the injunction, from enforcing 18 U.S.C. § 922(b)(3) and 27 CFR § 478.99, and any derivative provision, in such manner as to (a) forbid the sale of handguns to otherwise qualified individuals on account of their state of residence; or in the alternative, (b) from enforcing these provisions in such manner as to forbid the sale of handguns to otherwise qualified individuals where the sale would not violate any state or local law; or in the alternative, (c) from enforcing these provisions in such manner as to forbid the sale of handguns to otherwise qualified individuals who have complied with all state or local laws requiring licensing, pre-registration, or other form of pre-approval for the sale;

2.  Permanently enjoining Defendants, their officers, agents, servants, employees, and all persons in active concert or participation with them who receive actual notice of the injunction, from enforcing 18 U.S.C. § 922(a)(3) and any derivative provision, in such manner as to prohibit individuals complying with all other laws from bringing into their home state handguns acquired from federally-licensed dealers in another state.

3.  Declaratory relief consistent with the injunction;

4.  Attorney fees and costs of suit pursuant to 28 U.S.C. § 2412;

5.  Ordinary taxable costs of suit; and

6.  Any other further relief as the Court deems just and appropriate.

11

Dated: November 24, 2014

Respectfully submitted,

Alan Gura (Va. Bar No. 68842)
Gura & Possessky, PLLC
105 Oronoco Street, 305
Alexandria, VA 22314
703.835.9085/Fax 703.997.7665

William B. Mateja (Texas Bar No. 13185350)
Michael D. Nammar (Texas Bar No. 24091685)
Fish & Richardson P.C.
1717 Main Street, Suite 5000
Dallas, TX 75201
214.747.5070/Fax 214.747.2091

By:  /s/ Alan Gura
    Alan Gura

By:  /s/ William B. Mateja
    William B. Mateja

**GRE51**

15-10311.457

# State Residency Restrictions I

**EARLIEST KNOWN STATE RESIDENCY RESTRICTIONS
ON THE PURCHASE OR POSSESSION OF FIREARMS**

| State and Date of Enactment | Relevant Statutory Text | Source |
|---|---|---|
| West Virginia (1909) | That section seven of chapter one hundred and forty-eight of the code be amended and re-enacted so as to read as follows:<br><br>   Sec. 7.  If any person, *without a state license* therefor, *carry about his person any revolver or other pistol*, dirk, bowie knife, slung shot, razor, billy, metallic or other false knuckles, or any other dangerous or deadly weapon of like kind and character, *he shall be guilty of a misdemeanor*, and upon conviction thereof be confined in the county jail for a period of not less than six nor more than twelve months for the first offense; but upon conviction of the same person for the second offense in this state, he shall be guilty of a felony and be confined in the penitentiary not less than one nor more than five years, and in either case fined not less than fifty nor more than two hundred dollars, at the discretion of the court; . . . *Any person may obtain a state license* to carry any such weapon *within any county in this state by publishing a notice in some newspaper published in the county in which he resides*, setting forth his name, residence and occupation, and that on a certain day *he will apply to the circuit court of his county for such state license*, and after the publication of such notice for at least ten days before said application is made and at the time stated in said notice upon application to said circuit court, it may grant such person a license . . . . | Act of Feb. 16, 1909, ch. 51, 1909 W. Va. Acts 394, 395-96. |
| Georgia (1910) | [I]t shall be unlawful for any person to have or carry about his person, in any county in the State of Georgia, any pistol or revolver without first taking out a license from the Ordinary of the respective counties in which the party resides . . . . | Act of Aug. 12, 1910, No. 432, 1910 Ga. Laws 134. |
| New York (1913) | Any person over the age of sixteen years, who shall have in his possession in any city, village or town of this state, any pistol, revolver or other firearm of a size which may be concealed upon the person, without a written license therefor, issued to him as hereinafter prescribed, shall be guilty of a misdemeanor.<br><br>   Any person over the age of sixteen years, who shall have or carry concealed upon his person in any city, village, or town of this state, any pistol, revolver or other firearm without a | Act of May 21, 1913, ch. 608, § 1, 1913 N.Y. Laws 1627, 1628-29. |

15-10303.212

written license therefor, issued as hereinafter prescribed and
licensing such possession and concealment, shall be guilty of
a felony.

It shall be the duty of any magistrate in this state to whom
an application therefor is made by a commissioner of
correction of a city or by any warden, superintendent or head
keeper of any state prison, penitentiary, workhouse, county jail
or other institution for the detention of persons convicted of or
accused of crime, or offences, or held as witnesses in criminal
cases, to issue to each of such persons as may be designated in
such applications, and who is in the regular employ in such
institution of the state, or of any county, city, town or village
therein a license authorizing such person to have and carry
concealed a pistol or revolver while such person remains in the
said employ.

It shall be the duty of any magistrate in this state, upon
application therefor, by any householder, merchant,
storekeeper or messenger of any banking institution or express
company in the state, and provided such magistrate is satisfied
of the good moral character of the applicant, and provided that
no other good moral character of applicant, and provided that,
no other good cause exists for the denial of such application, to
issue to such applicant a license to have a possess a pistol or
revolver, and authorizing him (a) if a householder, to have
such weapon in his dwelling, and (b) if a merchant, or
storekeeper, to have such weapon in his place of business, and
(c) if a messenger of a banking institution or express company,
to have and carry such weapon concealed while in the employ
of such institution or express company.

In addition, *it shall be lawful* for any magistrate, upon proof
before him that the person applying therefor is of good moral
character, and that proper cause exist for the issuance thereof, *to
issue to such person a license to have and carry concealed a
pistol or revolver* without regard to employment or place of
possessing such weapon, *provided, however*, that *no such license
shall be issued* to any alien, or *to any person not a citizen of and
usually resident in the state of New York*, except by a judge or
justice or justice of a court of record in this state, who shall state
in such license the particular reason for the issuance thereof, and
the name of the person certifying to the good moral character of
the applicant.

15-A0311.213

| Illinois (1919) | It shall be unlawful for any person to carry concealed upon his person, any pistol, revolver, or other firearm, without a written license therefor . . . .   It shall be the duty of chief police officers in cities, and of justices of the peace and police magistrates elsewhere in the State . . . to issue a license to any citizen of the State of Illinois to carry concealed a pistol or revolver. | Act of July 11, 1919, § 4, 1919 Ill. Laws 431, 432. |
|---|---|---|
| Montana (1919) | Section 5.  *Any judge of a District Court of the state may grant permission to carry or bear concealed or otherwise  a pistol or revolver* for a term not exceeding one year.  All applications for such permission must be made by petition filed with the clerk of the District Court for the filing of which petition no charge shall be made.  The applicant shall, if personally unknown to the judge, furnish proof by a credible witness of his good moral character and peaceable deposition.  *No such permission shall be granted any person who is not a citizen of the United States, and who has not been an actual bona fide resident of the State of Montana for six (6) months immediately next preceding the date of such application. . . .* | Act of March 3, 1919, ch. 74, § 5, 1919 Mont. Acts 147, 148. |
| North Carolina (1919) | Section 1.  That *it shall be unlawful* for any person, firm, or corporation in this State to sell, give away or dispose of, or *to purchase or receive*, at any place within the State from any other place within or without the State, *without a license or permit* therefor shall have first been obtained by such purchaser or receiver form the clerk of the Superior Court of the county in which such purchase, sale, or transfer is intended to be made, *any pistol*, so-called pump-gun, bowie knife, dirk, dagger or metallic knucks.   Sec. 2.  That the clerks of the Superior Courts of any and all counties of this State are hereby authorized and directed to issue to any person, firm, or corporation in any such county a license or permit to purchase or receive any weapon mentioned in section one of this act from any person, firm, or corporation offering to sell or dispose of the same, which said license or permit shall be in the following form, to wit:   NORTH CAROLINA, _____County. I,_____, clerk of the Superior Court of said county, do hereby certify that _____*whose place of residence is* _____Street, in _____(or) | Act of March 10, 1919, ch. 197, §§ 1-2, 1919 N.C. Laws 397, 397-98. |

| | | |
|---|---|---|
| | in_____Township<br>_____*County, North Carolina*,<br>having this day satisfied me as to his, her (or) their good moral<br>character, and that the possession of one of weapons described<br>in section one of this act is necessary for self-defense or the<br>protection of the home, a license or permit is therefore hereby<br>given said<br><br>_____to purchase one pistol, (or)<br><br>_____(If any other weapon is named strike out word pistol.)<br>from any person, firm, or corporation authorized to dispose of<br>the same.<br>    This_____day of_____, 19____<br><br><br>Clerk Superior Court. | |
| Missouri (1921) | Sec. 2.  Shall secure permit to acquire weapon. — *No person*,<br>other than a manufacturer or wholesaler thereof to or from a<br>wholesale or retail dealer therein, for the purpose of commerce,<br>*shall* directly or indirectly *buy*, sell, borrow, loan, give away,<br>trade, barter, deliver or receive, in this state, *any pistol,<br>revolver or other firearm of a size which may be concealed<br>upon the person, unless the buyer*, borrower or person<br>receiving such weapon *shall first obtain* and deliver to, and the<br>same be demanded and received by, the seller, loaner, or<br>person delivering such weapon, within thirty days after the<br>issuance thereof, *a permit* authorizing such person to acquire<br>such weapon.  *Such permit shall be issued by the circuit clerk<br>of the county in which the applicant for a permit resides in this<br>state*, if the sheriff be satisfied that the person applying for the<br>same is of good moral character and of lawful age and that the<br>granting of the same will not endanger to public safety. | Act of April 7,<br>1921,§ 2, 1921<br>Mo. Laws 692. |
| Massachusetts<br>(1922) | Section 9.  The justice of a court or a trial justice, the board of<br>police or mayor of a city, the selectmen of a town, or the<br>commissioner of public safety, or persons authorized by them<br>may, *upon the application of any person residing or having a<br>place of business within the jurisdiction of the person issuing the<br>license*, issue a license to such person to carry a pistol or revolver<br>in the commonwealth if it appears that the applicant has good<br>reason to fear an injury to his person or property or for any other<br>proper purpose, and that he is a suitable person to be so licensed. | Act of May 29,<br>1922, ch. 485,<br>§ 9, 1922<br>Mass. Acts<br>560, 563. |
| New Jersey<br>(1924) | 1.   *Any person who shall carry any revolver, pistol or other<br>firearm* or other instrument of any kind known as a blackjack, | Act of March<br>11, 1924, |

15-App.0319.215

| | | |
|---|---|---|
| | slungshot, billy, sandclub, sandbag, bludgeon, metal knuckles, dagger, dirk, dangerous knife, stiletto, bomb or other high explosive, other than fixed ammunition in or about his clothes or person, or in any automobile, carriage, motor cycle, or other vehicle, *shall be guilty of a high misdemeanor*; . . . and *provided*, further, *nothing* in this act contained *shall be construed to apply to any person holding a permit to carry any revolver, pistol or other firearm*, when such permit has been obtained pursuant to the provisions of this act; nor to public utility corporations in the transportation of explosives to be used in their operation.<br><br>2. *Any person desirous of obtaining a permit* to carry a revolver, pistol or other firearm, pursuant to the provisions of the act, *shall* in the first instance, *make application* therefor *to the chief of police* of the *municipality in which the applicant resides*. In the event that the *applicant is a resident of a municipality having no chief of police* then application for a permit shall be made to the *sheriff of the county wherein the applicant resides*. *If such application is approved* by the chief of police or the sheriff, as the case may be, *the applicant shall then present* such application, so approved as a aforesaid, *to the Justice of the Supreme Court* holding the circuit *for the county in which the applicant is resident*, who, after investigation and being satisfied of the sufficiency of the application, and of the need of such person carrying concealed upon his person, a revolver, pistol or other firearm, shall issue a permit therefor . A permit so issued pursuant to the provisions of this act is sufficient authority for the holder thereof to carry concealed upon his person a revolver, pistol or other firearm in all parts of the State of New Jersey. . . . | ch. 137, §§ 1-2, 1924 N.J. Acts 305, 305-06. |
| Michigan (1927) | Sec. 2. *No person shall purchase a pistol* as defined in this act *without first having obtained a license* therefor as prescribed herein. The commissioner or chief of police, or his duly authorized deputy, in incorporated cities or in incorporated villages having an organized department of police, and the sheriff, or his authorized deputy, in parts of the respective counties not included within incorporated cities or villages, are hereby authorized to issue license to purchase pistols to applicants residing within the respective territories herein mentioned. *No such license shall be granted to any person except* he be nineteen years of age or over, and has *resided in this state six months or more*, and in no event shall such a license be issued to a person who has been convicted of a felony or adjudged insane in this state or elsewhere. | Act of June 2, 1927, ch. 372, §§ 2, 6, 1927 Mich. Acts 887, 887-88, 889. |

| | | |
|---|---|---|
| | Sec. 6. The prosecuting attorney, the commissioner or chief of police and the commissioner of public safety or their respective authorized deputies in incorporated cities or in incorporated villages having an organized department of police, and the prosecuting attorney, the commissioner of public safety or their authorized deputies, and the sheriff, under-sheriff or chief deputy sheriff in parts of the respective counties not included within incorporated cities or villages shall constitute boards exclusively authorized to issued licenses to carry pistols concealed on the person to applicants residing withing the respective territories herein mentioned. The boards, which boards shall be known in law as "The Concealed Weapon Licensing Board." *No such license to carry a pistol concealed on the person shall be granted to any person except he* be nineteen years of age or over and has *resided in this state six months or over*, and in no event shall such license be issued unless it appears that the applicant has good reason to fear injury to his person or property, or has other proper reason, and that he is a suitable person to be so licensed, and in no event to a person who has been convicted of a felony or adjudged insane in this state or elsewhere. | |
| Maine (1939) | Sec. 18. No person shall in a threatening manner display, or shall wear under his clothes, or conceal about his person any firearm, slung-shot, knuckles, bowie knife, dirk, stiletto, or other dangerous or deadly weapon *unless first licensed* to do so as herein provided. *The chief of police or city marshal of any city* or the *selectmen of any town* may upon written application therefor issue to any *legal resident of such city or town* of good moral character, a certificate setting forth that such person has been duly licensed to carry any weapon or weapons mentioned in the section. . . . Whoever violates any of the provisions of this section shall be punished by a fine of not more than $100, or by imprisonment for not more than 90 days. | Act of Feb. 25, 1939, ch. 14, 1939 Me. Acts 53, 2 Rev. Stat. of Me. 1871 (1944). |

# State Residency Restrictions II

**ADDITIONAL EARLIEST KNOWN STATE RESIDENCY
RESTRICTIONS ON THE PURCHASE OR POSSESSION OF FIREARMS**

| State and Date of Enactment | Relevant Statutory Text | Source |
|---|---|---|
| Rhode Island (1910) | *No person shall wear or carry*, in this state, any dirk, dagger, razor, sword-in-cane, bowie knife, butcher knife, or knife of any description having a blade of more than three inches in length, measuring from the end of the handle, where the blade is attached, to the end of said blade, any air-gun, billy, brass or metal knuckles, slung-shot, pistol, or *firearms of any description, concealed upon his person*: *Provided*, that, without written permission, officers or watchmen whose duties require them to arrest or to keep and guard prisoners or property, together with the persons summoned by such officers to aid them in the discharge of such duties, while actually engaged in such duties, – and also *such persons, citizens of this state*, as *have been granted written permission to carry* a billy, pistol, or *firearms of any description*, by the board of police commissioners or any city or town, or by the board of aldermen of any city or town council of any town where no board of police commissioners exist, – are exempted from the provisions of this and the two following sections as to carrying a billy, pistol, or firearms of any description.  Every application for such permit shall be in writing, signed by the applicant, and *no permit shall be issued unless the approval of the chief of police or town sergeant of the city or town in which the applicant resides* is endorsed on such application.  Before issuing any such permit the applicant for the same shall be required to give bond to the city or town treasurer in the penal sum of three hundred dollars, with surety satisfactory to the authority issuing such permit, to keep the peace and of good behavior. | Act of May 2, 1910, ch. 591, § 1, 1910 R.I. Acts 156, 156-57. |
| Oregon (1913) | Section 1.  It shall be *unlawful for any person*, firm or corporation to *display for sale at retail any pocket pistol or revolver* or to *sell at retail, barter, give away or dispose of the same* to any person whomsoever, excepting a policeman, member of the militia or peace officer of the State of Oregon, *unless the purchaser* or person attempting to procure the same *shall have a permit* for the purpose of procuring such pocket pistol or revolver *signed by the municipal judge* or *city record of the city* or *county judge* or a *justice of the peace of the county wherein such person resides*. | Act of Feb. 26, 1913, ch. 256, § 1, 1913 Or. Laws 497. |

| Montana (1918) | Section 1.  Within thirty days from the passage and approval of this Act, every person within the State of Montana, who owns or has in his possession any fire arms or weapons, shall make a full, true, and complete verified report upon the form hereinafter provided to the sheriff of the County in which such person lives, of all fire arms and weapons which are owned or possessed by him or her or are in his or her control, and on sale or transfer into the possession of any other person such person shall immediately forward to the sheriff of the County in which such person lives the name and address of that purchaser and person into whose possession or control such fire arm or weapon was delivered.<br><br>Section 2.   Such report shall be in the following form:<br><br>County of _____<br>No. _____<br><br>State of Montana<br>County of _____<br>_____, being first duly sworn on oath deposes and says:<br><br>1.  That he is a citizen of _____, and that his address is _____Street, City or Town of _____, County of _____.<br><br>2.  That he is the owner (has in his possession or control) the following fire arms and weapons.  Manufacturer's name \_\_\_ _____, Manufacturer's No._____, calibre, and where possible date and Manufacturer's series.<br><br>3.  That he was born at _____, on the \_\_\_\_\_ day of _____, A. D. 18\_\_\_, and that his occupation is _____.<br><br>4.  Description: Height\_\_\_\_ inches, color _____, skin _____, eyes _____, hair _____, _____,<br><br>Dated at _____, Montana, this _____ day of _____, _____ 1918.<br><br>Subscribed and sworn to before me this \_\_\_\_\_ day of \_\_\_\_\_, A.D. 1918. | Act of Feb. 20, 1918, ch. 2, §§ 1-3, 8, 1918 Mont. Laws 6, 6-9. |

| | | |
|---|---|---|
| | Section 3.   Any person signing a fictitious name or address or giving any false information is such report shall be guilty of a misdemeanor, and any person failing to file such report as in this Act provided, shall be guilty of a misdemeanor.  Such report may be verified before any person authorized by the laws of this state to administer oaths, or before any sheriff, under-sheriff, or deputy sheriff.  It *shall be unlawful for any person* to *purchase, borrow* or *otherwise acquire possession of any firearm or weapon as in this Act defined*, from any person, firm or corporation outside of the State of Montana, *without first obtaining a permit from the sheriff of the County in which such person lives*.  And no sheriff shall give any such permit without first procuring from such person an affidavit in substantially the same form as herein provided in Section 2, setting forth the description of the fire arm or weapon in Paragraph 2, which such person desires to purchase. No permit shall be given by the sheriff until he is satisfied that the person applying for such permit is of good moral character and does not desire such fire arm or weapon for any unlawful purpose. . . .<br><br>Section 8.  For the purposes of this Act a fire arm or weapon shall be deemed to be any revolver, pistol, shot gun, rifle, dirk, dagger or sword. | |
| Arkansas (1923) | From and after the passage of this Act, it shall be unlawful for any person to own or have in his custody or possession any pistol or revolver, except as herein provided:<br><br>     Section 1.  *Any person having in his possession or custody any pistol or revolver*, *shall* within 60 days from the approval of this Act, *present such firearm to the country clerk of the county*, *where he resides*, and it shall be the duty of the said county clerk to enter upon a separate record provided for that purpose, the name, age, place of residence, and color of the party, together with the make, caliber and number of said pistol or revolver. . . .<br><br>     Section 3.  Any person who shall purchase or acquire possession of any pistol or revolver shall make application and secure a permit to possess same as provided by section 2 of this Act, and any person having in his custody and control any pistol or revolver, and who has not secured the permit as herein provided shall be guilty of a misdemeanor and upon conviction shall be fined in any sum not less than fifty and not more than one hundred dollars, and said fire arm shall be taken by the sheriff, and publicity [sic] destroyed. | Act of March 19, 1923 §§ 1, 3 1923 Ark. Acts 379, 379-80. |

| Indiana (1935) | Section 1.  Be it enacted by the general assembly of the State of Indiana, That the term "pistol," as used in this act, means any firearm with barrel less than twelve inches in length. . . .<br><br>Sec. 3.  Carrying Pistol.  *No person shall carry a pistol in any vehicle or on or about his person*, except in his place of abode or fixed place of business, *without a license* therefor as hereinafter provided. . . .<br><br>Sec. 5.  Issue of Licenses to Carry.  Th*e judges of any circuit, superior or criminal court in this state, may upon the application of any person living within the jurisdiction of said court issue a license to such person to carry a pistol* in a vehicle or on or about his person within this state for not more than one year from date of issue, if it appears that the applicant has good reason to fear an injury to his person or property, or has any other property, or has any other proper reason for carrying a pistol, and that he is a suitable person to be so licensed.  The license shall be in triplicate, in form to be prescribed by the adjutant general, and shall bear the name, address, description, and signature of the licensee and the reason given for desiring a license.  The original thereof shall be delivered to the licensee, the duplicate shall within seven days be sent to by registered mail to the adjutant general and the triplicate shall be preserved for six years, by the authority issuing said license.  The fee for issuing such license shall be one dollar, which fee shall be paid into the county treasury. | Act of Feb. 21, 1935, ch. 63, §§ 1, 3, 5, 1935 Ind. Laws 159, 159-61. |
| Alabama (1937) | Section 1.  DEFINITIONS: "Pistol" as used in this Act, means any firearm with barrel less than twelve inches in length. . . .<br><br>Section 5.  CARRYING PISTOL: *No person shall carry a pistol in any vehicle or concealed on or about his person*, except in his place of abode or fixed place of business, *without a license therefor as hereinafter provided.* . . .<br><br>Section 7.  ISSUE OF LICENSES TO CARRY:  The Probate Judge, the Chief of Police of a municipality, the Sheriff of a County, may upon the application of any person issue a license to such person to carry a pistol in a vehicle or concealed on or about his person within this State for not more than one year from date of issue, if it appears that the applicant has good reason to fear an injury to his person or property, or has any other proper reason for carrying a pistol, and that he is a suitable person to be so licensed.  The license shall be in triplicate, in form to be | Act of Apr. 6, 1936, No. 82, §§ 1, 5, 7, 1936 Ala. Laws 51, 51-52; amended by Act of Mar. 2, 1937, No. 190, § 1, 1937 Ala. Laws 223, 223. |

**GRE61**

prescribed by the Secretary of State, and shall bear the name, address, description, and signature of the licensee and the reason given for desiring a license.  The original thereof shall be delivered to the licensee, the duplicate shall within seven days be sent by registered mail to the Secretary of State and the triplicate shall be preserved for six years, by the authority issuing said license.  The fee for issuing such license shall be 50c (fifty cents) which fee shall be paid into the State Treasury.

----------------------------------

Be it enacted by the Legislature of Alabama:

   Section 1.  That Section 7 of "an act to regulate the sale, transfer and possession of certain types of firearms; to provide for the licensing of dealers and owners of such firearms; to fix rules of evidence in the courts of this state in prosecutions for violation of this act; to prescribe penalties for the violation of any provision herein and to make uniform the laws with reference thereto," Approved April 6th, 1936, be amended so as to read as follows: Section 7.  ISSUE OF LICENSES TO CARRY: *The Sheriff of a County, may upon the application of any person residing in that county issue a license to such person to carry a pistol in a vehicle or concealed on or about his person* within this state for not more than one year from date of issue, if it appears that the applicant has good reason to fear an injury to his person or property, or has any other proper reason for carrying a pistol, and that he is a suitable person to be so licensed.  The license shall be in triplicate, in form to be prescribed by the Secretary of State, and shall bear the name, address, description, and signature of the licensee and the reason given for desiring a license.  The original thereof shall be delivered to the licensee, the duplicate shall within seven days by sent by registered mail to the Secretary of State and the triplicate shall be preserved for six years, by the authority issuing said license.  The fee for issuing such license shall be fifty cents ($.50) which fee shall be paid into the County Treasury.

# CERTIFICATE OF SERVICE

I hereby certify that on July 13, 2015, I filed the foregoing Record Excerpts by causing a digital version to be filed electronically via the ECF system.  The participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

 */s/ Tara S. Morrissey*
Tara S. Morrissey
Tara.S.Morrissey@usdoj.gov
Counsel for Appellants