No. 15-10311

_____

# IN THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

_____

FREDRIC RUSSELL MANCE, JR.; TRACEY AMBEAU HANSON;
ANDREW HANSON; CITIZENS COMMITTEE FOR THE
RIGHT TO KEEP AND BEAR ARMS,

*Plaintiffs-Appellees*,

v.

LORETTA LYNCH, U.S. ATTORNEY GENERAL; THOMAS E. BRANDON,
ACTING DIRECTOR, BUREAU OF ALCOHOL, TOBACCO,
FIREARMS AND EXPLOSIVES,

*Defendants-Appellants*.

_____

On Appeal from the United States District Court for the Northern District
of Texas, Fort Worth Division

_____

## BRIEF OF THE BRADY CENTER TO PREVENT GUN VIOLENCE AS *AMICUS CURIAE* IN SUPPORT OF DEFENDANTS-APPELLANTS

_____

SEAN A. LEV
MATTHEW A. SELIGMAN
EDUARDO F. BRUERA
KELLOGG, HUBER, HANSEN, TODD,
    EVANS & FIGEL, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
(202) 326-7900
(slev@khhte.com)

*Counsel for Amicus Curiae*

July 20, 2015

# CERTIFICATE OF INTERESTED PERSONS

*Mance, et al. v. Lynch, et al.*, No. 15-10311

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

**Plaintiffs-Appellees:**

Fredric Russell Mance, Jr.
Tracey Ambeau Hanson
Andrew Hanson
Citizens Committee For The Right To Keep And Bear Arms

**Counsel for Plaintiffs-Appellees:**

Alan Gura
Gura & Possessky

William B. Mateja
Michael D. Nammar
Fish & Richardson P.C.

**Defendants:**
Loretta Lynch
Thomas E. Brandon

**Counsel for Defendants-Appellants:**

Benjamin C. Mizer
Beth S. Brinkmann
John R. Parker
Mark B. Stern
Michael S. Raab
Tara S. Morrissey

Lesley R. Farby
Daniel M. Riess
U.S. Department of Justice

***Amicus Curiae*:**

The Brady Center to Prevent Gun Violence

**Counsel for *Amicus Curiae*:**

Sean A. Lev
Matthew A. Seligman
Eduardo F. Bruera
Kellogg, Huber, Hansen, Todd, Evans & Figel, P.L.L.C.


July 20, 2015                                    Respectfully submitted,


                                                 /s/ Sean A. Lev
                                                 Sean A. Lev,
                                                 Attorney of Record for The Brady
                                                 Center to Prevent Gun Violence

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, the Brady Center to Prevent Gun Violence states that it has no parent corporation, nor has it issued shares or debt securities to the public.  The Brady Center to Prevent Gun Violence is a 501(c)(3) non-profit corporation, and no publicly held corporation holds ten percent or more of its stock.

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...............................................................v

INTEREST OF *AMICUS CURIAE* ...............................................1

INTRODUCTION AND SUMMARY OF ARGUMENT .......................1

ARGUMENT .................................................................................4

I.     THE INTERSTATE SALES RESTRICTION IS NECESSARY TO ENSURE COMPLIANCE WITH IMPORTANT STATE GUN REGULATIONS.....................................................................4

II.    PUBLICLY AVAILABLE EVIDENCE STRONGLY SUPPORTS THE RATIONALE FOR THE INTERSTATE SALES RESTRICTION ...............................................................17

     A.     Social Science Research Indicates that States Are Successful at Addressing Trafficking Within Their Borders ...........................................................................17

     B.     ATF Data and Social Science Research Establish that Crime Guns Travel from States with Less Comprehensive Firearms Laws to Those with More Comprehensive Firearms Laws..........................................20

CONCLUSION ...........................................................................28

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

Page

## CASES

*10 Ring Precision, Inc. v. Jones*, 722 F.3d 711 (5th Cir. 2013) ...............................21

*Abramski v. United States*, 134 S. Ct. 2259 (2014) .....................................................1

*Board of Trustees of State Univ. of N.Y. v. Fox*, 492 U.S. 469 (1989) ...................28

*Dearth v. Lynch*, __ F.3d __, 2015 WL 3851905 (D.C. Cir. 2015)...........................2

*District of Columbia v. Heller*, 554 U.S. 570 (2008) ....................................1, 2, 3, 5

*Gonzales v. Carhart*, 550 U.S. 124 (2007) ..................................................................3

*Grand Jury Proceedings, In re*, 810 F.2d 580 (6th Cir. 1987) ...............................19

*McDonald v. City of Chicago*, 561 U.S. 742 (2010) .............................................1, 5

*National Shooting Sports Found., Inc. v. Jones*, 716 F.3d 200
  (D.C. Cir. 2013) ...........................................................................................21

*NRA v. McCraw*, 719 F.3d 338 (5th Cir. 2013) ......................................................19

*NRA v. ATF*, 700 F.3d 185 (5th Cir. 2012) ........................................................1, 2, 3

*R.M.J., In re*, 455 U.S. 191 (1982).............................................................................28

*Schrader v. Holder*, 704 F.3d 980 (D. C. Cir. 2013) ................................................2

*State v. Butler*, 724 A.2d 657 (Md. 1999)................................................................16

*State v. LaChapelle*, 451 N.W.2d 689 (Neb. 1990) ...................................................6

*United States v. Booker*, 644 F.3d 12 (1st Cir. 2011), *cert. denied*, 132
  S. Ct. 1538 (2012).............................................................................................3

*United States v. Carpio-Leon*, 701 F.3d 974 (4th Cir. 2012), *cert. denied*, 134 S. Ct. 58 (2013) ............................................................3

*United States v. Decastro*, 682 F.3d 160 (2d Cir. 2012), *cert. denied*, 133 S. Ct. 838 (2013)..........................................................2, 7, 28

*United States v. Dugan*, 657 F.3d 998 (9th Cir. 2011) ..............................2

*United States v. Hayes*, 555 U.S. 415 (2009) ...........................................1

*United States v. Henry*, 688 F.3d 637 (9th Cir. 2012), *cert. denied*, 133 S. Ct. 996 (2013)..................................................................................2

*United States v. Mahin*, 668 F.3d 119 (4th Cir. 2012).............................3

*United States v. Marzzarella*, 614 F.3d 85 (3d Cir. 2010), *cert. denied*, 131 S. Ct. 958 (2011)..............................................................2

*United States v. McRobie*, No. 08-4632, 2009 WL 82715 (4th Cir. Jan. 14, 2009) ...............................................................................2

*United States v. Moore*, 666 F.3d 313 (4th Cir. 2012) .............................2

*United States v. Pruess*, 703 F.3d 242 (4th Cir. 2012) .............................2

*United States v. Rene E.*, 583 F.3d 8 (1st Cir. 2009), *cert. denied*, 558 U.S. 1133 (2010)...................................................................2

*United States v. Wilson*, 73 F.3d 675 (7th Cir. 1995).............................28

*Woolard v. Gallagher*, 712 F.3d 865 (4th Cir. 2013) ...............................5

**CONSTITUTION AND STATUTES**

U.S. Const.:

Amend. II...............................................................................1, 3

Omnibus Crime Control and Safe Streets Act of 1968, Pub. L. 90-351, tit. IV, 82 Stat. 197, 225

§ 901(a)(1) ...................................................20

§ 901(a)(5) ....................................................7

18 U.S.C. § 922(a)(1)-(5)......................................20

18 U.S.C. § 922(b)(3)........................................2, 20

Ala. Code:

§ 13A-11-72...............................................12

§ 13A-11-78................................................8

§ 13A-11-79..............................................8, 9

§ 13A-11-83................................................8

§ 41-9-649.................................................9

Alaska Stat. § 11.61.200 ...................................11, 12

Ariz. Rev. Stat.:

§ 13-609 ..................................................10

§ 13-904(A)(5).............................................11

§ 13-904(H)...............................................11

§ 13-3101(A)(7)............................................11

§ 13-3102(A)(4)............................................11

§ 36-540 ..................................................10

§ 13-3113.................................................11

Ark. Code:

§ 5-73-103 ...................................................................................11

§ 5-73-132 ...................................................................................11

Cal. Penal Code:

§ 16350 ......................................................................................14

§ 16380 ......................................................................................14

§ 16790 ......................................................................................14

§ 16890 ......................................................................................14

§ 16900 ......................................................................................14

§ 17140 ......................................................................................14

§ 23515 ......................................................................................11

§ 26500 ........................................................................................7

§ 26815 ........................................................................................9

§ 26820 ......................................................................................21

§ 26825 ........................................................................................9

§ 26845 ........................................................................................9

§ 26890(a) ....................................................................................8

§§ 28100-28215 ...........................................................................9

§ 28220 ..................................................................................9, 10

§§ 28225-28415 ...........................................................................9

§§ 29800-29815 ...................................................................11, 12

§ 29820 .................................................................................11

§§ 29900-29905 ....................................................................11

§§ 30500-31115 ....................................................................14

§§ 31900-32110 ....................................................................14

Cal. Welf. & Inst. Code

§ 8100 ............................................................................10, 11

§ 8101 .................................................................................11

§ 8103 ..................................................................10, 11, 12, 13

§ 8104 .................................................................................10

§ 8105 ............................................................................10, 11

Cal. Code Regs. tit. 11, §§ 4047 - 4074....................................14

Colo. Rev. Stat.

§ 18-12-108.........................................................................11

§ 19-1-304(1)(a)(VII.5) ........................................................9

§ 19-1-304(2)(a)(II.5) ...........................................................9

Conn. Gen. Stat.:

§ 29-28 .................................................................................8

§ 29-33 .................................................................................9

§ 29-36k ..............................................................................11

§ 29-36*l*(d)(1) ................................................................9

§ 29-36n ...................................................................11

§ 29-37a(a) ................................................................9

§ 29-37f ....................................................................8

§ 29-37g(c) ................................................................9

§ 29-38b(a) ...............................................................9

§ 29-38c ...................................................................11

§ 53a-217 .................................................................11

§ 53a-217c ...............................................................11

§§ 53-202a – 53-202o ..............................................14

Del. Code Ann. tit. 11:

§ 1448 ................................................................11, 12

§ 1448A ....................................................................9

Del. Code Ann. tit. 24:

§§ 901 – 902 ..............................................................8

§ 903 ......................................................................12

§ 904(b) .....................................................................8

D.C. Code:

§ 7-2502.01 ...............................................................9

§ 7-2501.01(3A) .......................................................14

§ 7-2502.02(a)(6) ........................................................................... 14

§ 7-2502.03 ............................................................................. 9, 11, 12

§ 7-2502.04 ...................................................................................... 9

§ 7-2502.05 ...................................................................................... 9

§ 7-2502.07(a)-(b) ............................................................................. 9

§ 7-2504.01(b) .................................................................................. 7

§ 7-2505.01 .................................................................................... 14

§ 7-2505.02(a), (c) ......................................................................... 14

§ 7-2505.04 .................................................................................... 14

§ 22-4503 ....................................................................................... 12

D.C. Mun. Regs. tit. 24:

§ 2321 .............................................................................................. 7

§ 2323 ............................................................................................ 14

Fla. Stat.:

 790.065 ................................................................................... 9, 11, 12

§ 790.065(2)(a)(4) .......................................................................... 10

§ 790.23 ......................................................................................... 11

§ 790.233 ........................................................................................ 11

§ 943.045 ........................................................................................ 24

Ga. Code Ann.:

§ 16-11-171 .................................................................9

§ 16-11-172 .................................................................9

Haw. Rev. Stat. Ann.:

§ 134-1 ......................................................................14

§ 134-2 .......................................................................9

§ 134-3.5 ...............................................................9, 10

§ 134-4 ......................................................................14

§ 134-7 .................................................................11, 12

§ 134-8 ......................................................................14

§ 134-15(a) ................................................................14

§ 134-31 ......................................................................7

§ 334-2.5(c)(4) ...........................................................10

Idaho Code Ann.:

§ 66-356 ....................................................................10

§ 67-3003(1)(i) ..........................................................10

405 Ill. Comp. Stat.

5/6-103.1 ...................................................................12

5/6-103.2 – 5/6-103.3 ...........................................10, 12

430 Ill. Comp. Stat.:

    65/1 ...................................................................................12

    65/3.1 ............................................................................9, 10

    65/4 ...........................................................................9, 11, 12

    65/4(a)(3) ........................................................................10

    65/8 ..............................................................................11, 12

    65/8.1 ...............................................................................12

    65/8.1(b) ...........................................................................10

720 Ill. Comp. Stat. 5/24-3(A)(h) ...........................................14

740 Ill. Comp. Stat. 110/12(b) ................................................10

Ind. Code:

    § 12-26-6-8(g) .................................................................10

    § 12-26-7-5(c) ..................................................................10

    § 35-47-2-7 ................................................................11, 12

    §§ 35-47-2-14 – 35-47-2-16 ...........................................8

    § 35-47-2.5-1 – 35-47-2.5-15 .........................................9

    §§ 35-47-4-1 ....................................................................12

    §§ 35-47-4-5 – 35-47-4-6 ..............................................11

Iowa Code:

    § 724.15 ...........................................................................11

§ 724.16 ........................................................................................9

§§ 724.17 – 724.21A .......................................................................9

§ 724.26 ......................................................................................11

Kan. Stat.:

§ 21-6301(a)(10), (a)(13)............................................................12

§ 21-6301(a)(13) .........................................................................12

§ 21-6304 ....................................................................................11

Ky. Rev. Stat.:

§ 237.070 .....................................................................................11

§ 527.040 .....................................................................................11

Me. Rev. Stat. tit. 15, § 393 ...........................................................11, 12

Md. Code Ann., Crim. Law §§ 4-301 – 4-303........................................14

Md. Code Ann., Pub. Safety:

§ 5-101 .........................................................................7, 8, 11, 12, 14

§§ 5-102 – 5-105.........................................................................14

§ 5-106 ................................................................................7, 8, 14

§§ 5-107 – 5-116.........................................................................14

§§ 5-117 – 5-126.....................................................................9, 14

§§ 5-127 – 5-132.........................................................................14

§ 5-133 .................................................................................11, 12, 14

§§ 5-133.1 –5-133.2 .................................................................14

§ 5-133.3 ...........................................................................12, 14

§§ 5-134 – 5-143 ...................................................................14

§ 5-205 ...............................................................................11, 12

§ 5-206 ....................................................................................11

§§ 5-405 – 5-406 ...................................................................14

Mass. Gen. Laws ch. 140:

§ 121 ........................................................................................14

§ 122 ....................................................................................7, 14

§ 122B .......................................................................................7

§ 123 .................................................................................7, 9, 14

§ 128 .........................................................................................7

§ 129B ..............................................................................9, 11, 12

§129C – 129D .....................................................................11, 12

§ 131 ...........................................................................9, 11, 12, 14

§ 131 1/2 ...................................................................................14

§ 131 3/4 ...................................................................................14

§ 131D .....................................................................................12

§§ 131E – 131F .....................................................................11, 12

§ 131M .....................................................................................14

501 Mass. Code Regs. §§ 7.01 – 7.16 ....................................................14

940 Mass. Code Regs. §§ 16.01 – 16.09 ................................................14

Mich. Comp. Laws:

§ 28.422 ...........................................................................................9, 12

§ 330.1464a ........................................................................................10

Minn. Stat.:

§ 518B.01 ...........................................................................................11

§ 609.224 ...........................................................................................11

§ 609.2242 .........................................................................................11

§ 609.749 ...........................................................................................11

§ 624.712 ...........................................................................................14

§ 624.713 ...............................................................................11, 12, 14

§ 624.7131 – .7132 ...........................................................................9, 14

§ 624.714 – .7141 ..............................................................................14

§ 624.716 ...........................................................................................14

Miss. Code Ann.:

§ 9-1-49 .............................................................................................10

§ 45-9-103 .........................................................................................10

§ 97-37-5 ...........................................................................................12

§ 97-37-13 .........................................................................................13

Mo. Rev. Stat. § 571.070 .................................................................12, 13

Neb. Rev. Stat.:

    § 28-1206 ...........................................................................11

    § 69-2401- 69-2423 ..........................................................9

    § 69-2409.01 .....................................................................10

Nev. Rev. Stat.:

    § 179A.163(1)....................................................................10

    § 179A.165(1)....................................................................10

    § 202.360 ..........................................................................12

    § 433A.310(4)...................................................................10

    § 433A.310(5)...................................................................10

N.H. Rev. Stat. Ann.:

    § 159:8 ................................................................................8

    § 159:10 ..............................................................................8

    § 159-D:1 ............................................................................9

N.J. Stat. Ann.:

    § 2C:39-1w .......................................................................14

    § 2C:39-5 ..........................................................................14

    § 2C:39-7 ............................................................11, 12, 13

    § 2C:58-2a .....................................................................7, 8

§ 2C:58-3 ...................................................................................11, 12, 13

§ 2C:58-3e ...........................................................................................9

§ 2C:58-5 ...........................................................................................14

§ 2C:58-12 ........................................................................................14

§ 2C:58-13 ........................................................................................14

N.J. Admin. Code § 13:54-3.2 .........................................................7

N.Y. Crim. Proc. Law:

§ 330.20 ............................................................................................12

§ 380.96 ............................................................................................12

N.Y. Mental Hygiene Law § 9.46 ...................................................12

N.Y. Penal Law:

§ 265.00 ......................................................................................11, 12

§ 265.00(9) .........................................................................................8

§ 265.00(22) ....................................................................................14

§ 265.01 ......................................................................................11, 12

§ 265.02(7) ......................................................................................14

§ 265.10 ............................................................................................14

§ 400.00 ..........................................................................8, 9, 11, 12

§ 400.00(12-a) ................................................................................14

§ 400.00(16-a) ................................................................................14

N.Y. Comp. Codes R. & Regs. tit. 9, § 482.1 – 482.7.............................................14

N.C. Gen. Stat.:

    § 14-402 ........................................................................................9, 12

    § 14-404 ........................................................................................9, 12

    § 14-404(c1)......................................................................................10

    § 14-415.3 .........................................................................................12

    § 122C-54(d1)...................................................................................10

    § 122C-54(d2)...................................................................................10

N.D. Cent. Code:

    § 62.1-02-01...............................................................................11, 12

    § 62.1-02-01.2...................................................................................10

Ohio Rev. Code § 2923.13................................................................11, 12, 13

Okla. Stat. tit. 21:

    § 1289.10 ...........................................................................................12

    § 1289.12 ...............................................................................11, 12, 13

    § 1283 ................................................................................................11

Or. Rev. Stat.:

    § 166.250(1)(c) ...........................................................................11, 12

    § 166.270 ...........................................................................................11

    § 166.412 .............................................................................................9

§ 166.432 ...........................................................................................9, 10

§ 166.434 ...........................................................................................9, 10

§ 166.470 .........................................................................................11, 12

§ 181.740 ................................................................................................10

§ 426.130 ................................................................................................10

§ 426.160 ................................................................................................10

Or. Admin. R. 257-010-0060 ..................................................................10

Pa. Code:

§ 33.103(e) .............................................................................................10

§ 33.120 ..................................................................................................10

18 Pa. Cons. Stat.:

§ 6105 .............................................................................................11, 12, 13

§ 6109 ................................................................................................10, 11

§ 6109(i.1) .............................................................................................10

§ 6111 ..............................................................................................9, 10, 11

§ 6111.1 ...........................................................................................9, 10, 11

Pa. Cons. Stat. §§ 6111.2 – 6111.3..........................................................9

§ 6112 ....................................................................................................7

50 Pa. Stat. Ann.:

§ 7109 ....................................................................................................10

§ 7111 ......................................................................................................10

R.I. Gen. Laws:

    § 11-47-6........................................................................................12, 13

    § 11-47-35......................................................................................9

    § 11-47-35.2...................................................................................9

    § 11-47-38......................................................................................7

    § 11-47-39......................................................................................7

San Francisco Police Code §§ 613-619 ...................................................8

S.C. Code Ann.:

    § 16-23-30......................................................................................12, 13

    § 23-31-1040..................................................................................12

S.D. Codified Laws:

    § 22-14-15 – 22-14-15.2...............................................................11

    § 27A-10-24...................................................................................10

Tenn. Code Ann.:

    § 16-10-213(b), (c).......................................................................10

    § 16-11-206(b), (c).......................................................................10

    § 16-15-303(g)..............................................................................10

    § 16-16-120(b)..............................................................................10

    § 33-3-115.....................................................................................10

§ 39-17-1307 ............................................................11

§ 39-17-1316 ................................................9, 11, 12, 13

§ 39-17-1321 ......................................................12, 13

Tex. Penal Code:

§ 46.04 ...............................................................11, 13

46.06(a)(3) ........................................................12, 13

§ 46.06(a)(4) .............................................................13

Utah Code Ann.:

§ 76-10-503(1)-(3) ..............................................11, 12

§ 76-10-526............................................................9, 10

Va. Code Ann.:

§ 18.2-287.4 .............................................................14

§ 18.2-308.1:1 – 1:3 ...............................................12

§ 18.2-308.1:5 ..........................................................12

§ 18.2-308.2 .............................................................11

§ 18.2-308.2:01 .......................................................14

§ 18.2-308.2:2 .......................................................9, 14

§ 18.2-308.2:3 ...........................................................8

§ 18.2-308.7 .............................................................14

§ 18.2-308.8 .............................................................14

§ 19.2-169.2 ..................................................................10

§ 37.2-819 ....................................................................10

§ 52-4.4 ........................................................................9

Wash. Rev. Code Ann.:

§ 9.41.010 ....................................................................11

§ 9.41.040 ................................................................11, 12

§ 9.41.047 ....................................................................10

§ 9.41.090 .....................................................................9

§ 9.41.090(4) ................................................................9

§ 9.41.094 .................................................................9, 10

§ 9.41.097 .................................................................9, 10

§ 9.41.110 .....................................................................7

§ 9.41.110(5)(b) ...........................................................8

W. Va. Code:

§ 27-5-4(c)(3) ..............................................................11

§ 61-7-7 ...............................................................11, 12, 13

§ 61-7A-2 ....................................................................10

§ 61-7A-3 ....................................................................10

§ 61-7A-4 ....................................................................10

Wis. Stat.:

    § 51.20(13)(cv)(4) ...........................................................10

    § 51.45(13)(i)(1) ..................................................11, 12, 13

    § 54.10(3)(f)(1) ...................................................11, 12, 13

    § 55.12(10)(a) ..........................................................12, 13

    § 175.35 ......................................................................9, 10

    § 175.35(2g)(d)(1) ......................................................10

    § 941.29 ..............................................................11, 12, 13

Wis. Admin. Code Jus §§ 10.01-10.12 ...............................10

Wyo. Stat. § 6-8-404 ............................................................12

## REGULATIONS

27 C.F.R. § 478.99(a) .............................................................2

28 C.F.R. § 25.4 ....................................................................9

## LEGISLATIVE MATERIALS

H.R. Rep. No. 90-1577, *reprinted in* 1968 U.S.C.C.A.N. 4410 (1968) ..................20

S. Rep. No. 89-1866 (1966) ...................................................20, 21, 27

S. Rep. No. 90-1097, *reprinted in* 1968 U.S.C.C.A.N. 2112 (1968) .......................6

# OTHER MATERIALS

ATF, *ATF Releases U.S. Firearms Trace Data for 2013* (June 9, 2014),
    *available at* https://www.atf.gov/news/pr/atf-releases-us-firearms-
    trace-data-2013 ........................................................................................21, 22

Bureau of Alcohol, Tobacco, Firearms, and Explosives, *Firearms
    Trace Data – 2013*, *available at*
    https://www.atf.gov/about/firearms-trace-data-2013 .............................22, 23

Saul Cornell & Nathan DeDino, *A Well Regulated Right: The Early
    American Origins of Gun Control*, 73 Fordham L. Rev. 487
    (2004)...........................................................................................................6

Criminal Justice Information Services Division, FBI, *National Instant
    Criminal Background Check System (NICS) Operations 2012*,
    *available at* http://www.fbi.gov/about-us/cjis/nics/reports/2012-
    operations-report...........................................................................................13

Dep't of Justice, *Firearm Violence, 1993-2011* (May 2013), *available at*
    http://www.bjs.gov/content/pub/pdf/fv9311.pdf ........................................5, 6

B.G. Knight, *State Gun Policy and Cross-State Externalities: Evidence
    from Crime Gun Tracing*, Nat'l Bureau of Econ. Research
    Working Paper No. 17469 (Sept. 2011), *available at*
    http://www.nber.org/papers/w17469.pdf......................................................26

*Mayors Against Illegal Guns, Trace the Guns : The Link Between Gun
    Laws and Interstate Gun Trafficking* (Sept. 2010), *available at*
    http://www.tracetheguns.org/report.pdf .....................................22, 24, 25, 26

U.S. Gov't Accountability Office, GAO-12-684, *Gun Control:
    Sharing Promising Practices and Assessing Incentives Could
    Better Position Justice to Assist States in Providing Records for
    Background Checks* (July 2012), *available at*
    http://www.gao.gov/assets/600/592452.pdf: .................................................10

Jon S. Vernick & Daniel W. Webster, *Curtailing Dangerous Sales Practices by Licensed Firearm Dealers*, in *Reducing Gun Violence in American: Informing Policy with Evidence and Analysis* (Daniel W. Webster & Jon S. Vernick eds., 2013) ....................8, 16

Jon S. Vernick & Daniel W. Webster & Lisa M. Hepburn, *Effects of Maryland's Law Banning Saturday Night Special Handguns on Crime Guns*, 5 Injury Prevention 259 (1999) .................................................14

Violence Policy Center, *Pocket Rockets: The Gun Industry's Sale of Increased Killing Power* (July 2000), *available at* http://www.vpc.org/studies/pockcont.htm .....................................................15

Daniel W. Webster, Jon S. Vernick & Maria T. Bulzacchelli, *Effects of State-Level Firearm Seller Accountability Policies on Firearm Trafficking*, 86 J. Urban Health 525 (2009) ...................................................18

Daniel W. Webster, Jon S. Vernick & Lisa M. Hepburn, *Relationship between licensing, registration, and other gun sales laws and the source state of crime guns*, 7 Injury Prevention 184, 185 (2001) .................27

Daniel W. Webster, Jon S. Vernick, Emma E. McGinty & Ted Alcorn, *Preventing the Diversion of Guns to Criminals through Firearm Sales Laws*, in *Reducing Gun Violence in America: Informing Policy with Evidence and Analysis* 109 (Daniel W. Webster & Jon S. Vernick eds., 2013) ..........................................................18, 27

Garen J. Wintemute, *Gun shows across a multistate American gun market: observational evidence of regulatory policies*, 13 Injury Prevention 150 (2007) ..................................................................18

## INTEREST OF *AMICUS CURIAE*[1]

The Brady Center to Prevent Gun Violence is a non-profit organization dedicated to reducing gun violence through education, research, and legal advocacy. Its membership includes individuals who are concerned with, and are affected by, the public health and safety issues stemming from gun violence. The Brady Center has a substantial interest in ensuring that the Second Amendment is not misinterpreted as a barrier to strong and effective government action to prevent gun violence. Through its Legal Action Project, the Brady Center has filed numerous briefs *amicus curiae* in cases involving the constitutionality and interpretation of gun laws, including *District of Columbia v. Heller*, 554 U.S. 570 (2008), *United States v. Hayes*, 555 U.S. 415, 427 (2009) (citing Brady Center brief), *McDonald v. City of Chicago*, 561 U.S. 742 (2010), *Abramski v. United States*, 134 S. Ct. 2259 (2014), and *National Rifle Association v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*, 700 F.3d 185 (5th Cir. 2012) ("*NRA*").

## INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiffs challenge on Second Amendment grounds a federal firearms statute and its enabling regulation restricting interstate sales of firearms other than

---

[1] Pursuant to Federal Rule of Appellate Procedure 29(a), counsel for *Amicus Curiae* certify that all parties to this appeal have consented to the filing of this brief. Pursuant to Federal Rule of Appellate Procedure 29(c)(5), counsel for *Amicus Curiae* represent that no counsel for a party authored the brief in whole or in part and that no person or entity, other than *Amicus* or its counsel, made a monetary contribution to the preparation or submission of this amicus brief.

rifles and shotguns.  *See* 18 U.S.C. § 922(b)(3); 27 C.F.R. § 478.99(a) ("In-State

Sales Requirements").  The In-State Sales Requirements require only that

individuals receive those firearms they purchase out of state through a Federal

Firearms Licensee ("FFL") in their home jurisdiction.  The In-State Sales

Requirements thus do not "ban[]" firearms "from [individuals'] home[s]."  *Heller*,

554 U.S. at 628.  Nor do they bar anyone from purchasing whatever lawful

firearms they may desire, including the exact handguns Plaintiffs here wish to

purchase.  This limited burden, by Plaintiffs' own admission, injures them solely

by "increas[ing] the cost of handgun purchases . . . by $125, plus the costs of

shipping."  ROA.454, GRE48.

　　　The Government persuasively demonstrates that the In-State Sales

Requirements are constitutionally sound under Supreme Court precedent, this

Court's cases, and the decisions of other courts of appeals.[2]  As the Government's

_____

　　　[2] *See*, *e.g.*, *United States v. Decastro*, 682 F.3d 160, 161 (2d Cir. 2012)
(transportation of firearm from another state into one's state of residence under
section 922(a)(3)), *cert. denied*, 133 S. Ct. 838 (2013); *NRA*, 700 F.3d at 203-04
(sale of handgun by federally licensed dealer to person under 21 years old pursuant
to section 922(b)(1)), *cert. denied*, 134 S. Ct. 1364 (2014); *United States v. Moore*,
666 F.3d 313, 316-17 (4th Cir. 2012) (possession of firearm by felon under section
922(g)(1)); *Schrader v. Holder*, 704 F.3d 980, 990-91 (D.C. Cir. 2013) (section
922(g)(1) as applied to common-law misdemeanants); *United States v. Pruess*, 703
F.3d 242, 247 (4th Cir. 2012) (section 922(g)(1) as applied to nonviolent felons);
*United States v. Dugan*, 657 F.3d 998, 999 (9th Cir. 2011) (possession of firearm
by unlawful user of controlled substance under section 922(g)(3)); *United States v.
McRobie*, No. 08-4632, 2009 WL 82715, at *1 (4th Cir. Jan. 14, 2009)
(unpublished per curiam) (possession of firearm by person committed to mental

brief correctly explains, the In-State Sales Requirements fall well outside of the "core Second Amendment right of self-defense in the home." Gov't Br. at 14 (citing *Heller*, 554 U.S. at 626-27 & n.26). They therefore do not "impinge[] upon a right protected by the Second Amendment." *NRA*, 700 F.3d at 194. Even if the In-State Sales Requirements did burden a cognizable Second Amendment interest (and they do not), they would survive the intermediate scrutiny to which they would be subject. They are a "reasonable fit" with the "important government objective," *id.* at 195, of ensuring that State handgun regimes—none of which are challenged by Plaintiffs—are not circumvented by out-of-state purchases.

The Brady Center seeks to bring to the Court's attention two key issues. *First*, the district court failed to recognize that the In-State Sales Requirements play a crucial role in facilitating compliance with lawful—and unchallenged—

---

institution under section 922(g)(4)); *United States v. Carpio-Leon*, 701 F.3d 974, 982 (4th Cir. 2012) (possession of firearm by illegal alien under section 922(g)(5)), *cert. denied*, 134 S. Ct. 58 (2013); *United States v. Mahin*, 668 F.3d 119, 123-24 (4th Cir. 2012) (possession of firearm while subject to domestic protection order under section 922(g)(8)); *United States v. Booker*, 644 F.3d 12, 26 (1st Cir. 2011) (possession of firearm by person convicted of domestic violence misdemeanor under section 922(g)(9)), *cert. denied*, 132 S. Ct. 1538 (2012); *United States v. Marzzarella*, 614 F.3d 85, 101 (3d Cir. 2010) (possession of firearm with obliterated serial number under section 922(k)), *cert. denied*, 131 S. Ct. 958 (2011); *United States v. Henry*, 688 F.3d 637, 640 & n.3 (9th Cir. 2012) (possession of machine gun under section 922(o)), *cert. denied*, 133 S. Ct. 996 (2013); *United States v. Rene E.*, 583 F.3d 8, 12 (1st Cir. 2009) (possession of handgun by juvenile under section 922(x)(2)), *cert. denied*, 558 U.S. 1133 (2010). *Cf. Dearth v. Lynch*, __ F.3d __, 2015 WL 3851905 (D.C. Cir. June 23, 2015) (remanding for trial a challenge to section 922(a)(9) and (b)(3) as applied to citizens not residing in any State).

State gun regulations. States and local jurisdictions have widely varying handgun laws. It is reasonable to conclude that out-of-state dealers will not be able to monitor and comply with those varied regulations. Moreover, interstate sales direct to consumers would undermine the effective enforcement of State law because local law enforcement lacks the resources and the legal authority to monitor, inspect, and prosecute out-of-state dealers selling firearms to their citizens.

*Second*, empirical evidence demonstrates that State regimes are effective in preventing intrastate diversions of guns within their own borders by regulating firearms sales. By contrast, recent statistical evidence and social science analysis clearly demonstrate that there is significant interstate trafficking of firearms from States with less stringent firearms regulations to those with more comprehensive regimes. Those findings validate both the purpose and need for the In-State Sales Requirements: to prevent out-of-state purchasers from circumventing state handgun regimes by requiring interstate purchases to go through local FFLs.

## ARGUMENT

## I. THE INTERSTATE SALES RESTRICTION IS NECESSARY TO ENSURE COMPLIANCE WITH IMPORTANT STATE GUN REGULATIONS

The In-State Sales Requirements are calculated to stem the tide of the interstate trafficking of guns by facilitating compliance with State and local gun

regulations.  The Supreme Court explained that *Heller* should not "be taken to cast doubt on . . . laws imposing conditions and qualifications on the commercial sale of arms."  *Heller*, 554 U.S. at 626-27; *see also McDonald*, 561 U.S. at 786 (plurality) ("We made it clear in *Heller* that our holding did not cast doubt on such longstanding regulatory measures as . . . 'laws imposing conditions and qualifications on the commercial sale of arms'. . . . We repeat those assurances here.").  The In-State Sales Requirements—which provide that interstate sales be completed via a local FFL—are just such regulations and accordingly constitute "presumptively lawful regulatory measure[s]."  *Heller*, 554 U.S. at 626-27 & n.26. Their validity is underscored by their essential role in ensuring compliance with important—and unchallenged—State regulations on the commercial sale of firearms.

No one disputes "the problem of handgun violence in this country."  *Id.* at 636.  "Handguns are the weapon of choice for criminal activity . . . because they are small, relatively lightweight, easy to carry and conceal, easy to load and fire, deadly at short range, and ideal for surprise attacks."  *Woolard v. Gallagher*, 712 F.3d 865, 877 (4th Cir. 2013) (citation and internal quotation marks omitted).  In 2011, the most recent year with data, 7,230 homicides were committed with handguns.  *See* Dep't of Justice, *Firearm Violence, 1993-2011*, at 3 tbl. 3 (May 2013), *available at* http://www.bjs.gov/content/pub/pdf/fv9311.pdf.  That year,

almost 390,000 additional nonfatal violent offenses, such as rape, sexual assault, robbery, and assault, involved a handgun. *Id.*

The States have long played a role in regulating handguns, as well as other firearms, by exercising their police powers. *See* S. Cornell & N. DeDino, *A Well Regulated Right: The Early American Origins of Gun Control*, 73 Fordham L. Rev. 487, 501-02 (2004); *see*, *e.g.*, *State v. LaChapelle*, 451 N.W.2d 689, 691 (Neb. 1990) (upholding statute as "a valid exercise of the State's police power in reasonable regulation of certain firearms"). In enacting the In-State Sales Requirements, Congress recognized that local dealers who are familiar with State law and who continuously interact with local law enforcement are best situated to comply with State and local firearms regulations and that local law enforcement is best able to ensure compliance with local law by local dealers. *See* S. Rep. No. 90-1097, at 50, *reprinted in* 1968 U.S.C.C.A.N. 2112, 2166 (1968) (explaining that the In-State Sales Requirements "will enable the States to more effectively control this traffic within their own jurisdictions under the police power granted to them by the Constitution"). The In-State Sales Requirements work to ensure the effective enforcement of State regulations by channeling all interstate sales of handguns through a local FFL. Congress understood that "the sale or other disposition of concealable weapons by [FFLs] to nonresidents of the State in which the licensees' places of business are located, has tended to make ineffective the laws, regulations,

and ordinances in the several States and local jurisdictions regarding such firearms." Omnibus Crime Control and Safe Streets Act of 1968, Pub. L. No. 90-351, tit. IV, § 901(a)(5), 82 Stat. 197, 225; *see Decastro*, 682 F.3d at 168 (explaining that restrictions on the interstate transport of firearms "stop circumvention of state laws regulating gun possession . . . by requiring state residents to comply with conditions of sale and similar requirements in their home state").

That congressional determination was and remains reasonable. State regulations are complex and vary widely. For instance, many States require firearms dealers to obtain State firearm sales licenses separate from federal licenses, but there is wide variation in what these licensing requirements entail. California, Hawaii, Massachusetts, New Jersey, Pennsylvania, Rhode Island, Washington, and the District of Columbia require licenses for dealers engaged in the sale of any firearms.[3] New Jersey additionally requires all employees of dealers to be licensed.[4] Alabama, Connecticut, Delaware, Indiana, Maryland, New Hampshire, and New York require licenses for the sale of handguns or other

---

[3] *See* Cal. Penal Code § 26500; D.C. Code § 7-2504.01(b); D.C. Mun. Regs. tit. 24, § 2321; Haw. Rev. Stat. Ann. § 134-31; Md. Code Ann., Pub. Safety §§ 5-101, 5-106; Mass. Gen. Laws ch. 140, §§ 122, 122B, 123, 128; N.J. Stat. Ann. § 2C:58-2a; N.J. Admin. Code § 13:54-3.2; 18 Pa. Cons. Stat. § 6112; R.I. Gen. Laws §§ 11-47-38, 11-47-39; Wash. Rev. Code Ann. § 9.41.110.

[4] N.J. Stat. Ann. § 2C:58-2a, N.J. Admin. Code § 13:54-3.2.

specified firearms—but only in certain and differing circumstances.[5]  Connecticut,

Delaware, New Jersey, Virginia, and Washington require background checks on

firearms dealers' employees.[6]  Some of these states impose conditions such as

background checks, minimum-age requirements, criminal-history standards, and

fingerprinting, while others issue licenses upon the completion of a form and the

payment of a fee.  *See* J.S. Vernick & D.W. Webster, *Curtailing Dangerous Sales*

*Practices by Licensed Firearm Dealers*, *in Reducing Gun Violence in America:*

*Informing Policy with Evidence and Analysis* 133, 134 (D.W. Webster & J.S.

Vernick eds., 2013) ("*Curtailing Dangerous Sales Practices*").  Furthermore, some

local jurisdictions impose additional regulations on the commercial sale of

firearms.[7]  Allowing individuals to purchase firearms out-of-state would permit

purchasers to circumvent these carefully crafted State licensing requirements.

    States also vary in their regulation of background checks of potential

purchasers.  Approximately half the States require background checks of

purchasers for firearms sales by licensed dealers in addition to the background

---

[5] *See* Ala. Code §§ 13A-11-78, 13A-11-79, 13A-11-83; Conn. Gen. Stat.
§ 29-28; Del. Code Ann. tit. 24, §§ 901-902; Ind. Code §§ 35-47-2-14 – -16; Md.
Code Ann., Pub. Safety §§ 5-101, 5-106; N.H. Rev. Stat. Ann. §§ 159:8, 159:10;
N.Y. Penal Law §§ 265.00(9), 400.00.

[6] *See* Conn. Gen. Stat. § 29-37f; Del. Code Ann. tit. 24, § 904(b); N.J. Stat.
Ann. § 2C:58-2a; Va. Code Ann. § 18.2-308.2:3; Wash. Rev. Code Ann.
§ 9.41.110(5)(b).

[7] *See*, *e.g.*, San Francisco Police Code §§ 613-619.

check required by federal law. These additional state-level background checks often evaluate information in State databases to which the federal background checks do not have access. Seventeen States require background checks for sales of all types of firearms.[8] Ten additional States require a background check only for handgun sales.[9] The scope of these State-mandated background checks also varies widely. Nine States require a search of in-state mental health files[10]—an important supplement to the federal background check because federal law does not require

---

[8] *See* Ala. Code §§ 13A-11-79, 41-9-649; Cal. Penal Code §§ 26815, 26825, 26845, 28100-28415; Colo. Rev. Stat. §§ 19-1-304(1)(a)(VII.5), (c)(II.5), (2)(a)(II.5), 24-33.5-424; Conn. Gen. Stat. §§ 29-33, 29-36*l*(d)(1), 29-37a(a), 29-37g(c); Del. Code Ann. tit. 11, § 1448A; D.C. Code §§ 7-2502.01, 7-2502.03, 7-2502.04, 7-2502.05, 7-2502.07(a)-(b); Fla. Stat. § 790.065; Ga. Code Ann. §§ 16-11-171, 16-11-172; Haw. Rev. Stat. §§ 134-2, 134-3.5; 430 Ill. Comp. Stat. 65/3.1; Mass. Gen. Laws ch. 140, §§ 123, 129B, 131; Or. Rev. Stat. §§ 166.412, 166.432, 166.434; 18 Pa. Cons. Stat. §§ 6111 – 6111.3; R.I. Gen. Laws §§ 11-47-35, 11-47-35.2; Tenn. Code Ann. § 39-17-1316; Utah Code Ann. § 76-10-526; Va. Code Ann. §§ 18.2-308.2:2, 52-4.4.

[9] *See* Ind. Code §§ 35-47-2.5-1 – 35-47-2.5-15; Iowa Code §§ 724.16, 724.17 – 724.21A; Md. Code Ann., Pub. Safety §§ 5-117 – 5-126; Mass. Gen. Laws ch. 140, §§ 123, 129B, 131; Mich. Comp. Laws Serv. § 28.422; Minn. Stat. §§ 624.7131, 624.7132 (handguns and assault weapons); Neb. Rev. Stat. § 69-2401– 69-2423; N.H. Rev. Stat. Ann. § 159-D:1; N.C. Gen. Stat. §§ 14-402 – 14-404; Wash. Rev. Code Ann. §§ 9.41.090, 9.41.094, 9.41.097; Wis. Stat. § 175.35; Wis. Admin. Code Jus §§ 10.01-10.12.

[10] *See* Cal. Penal Code § 28220; Conn. Gen. Stat. §§ 29-38b(a); 430 Ill. Comp. Stat. 65/3.1; Mass. Gen. Laws ch. 140, §§ 129B, 131; Minn. Stat. §§ 624.7131, 624.7132; N.Y. Penal Law § 400.00; Or. Rev. Stat. §§ 166.412, 166.432, 166.434; 18 Pa. Cons. Stat. §§ 6111 – 6111.1; Wash. Rev. Code Ann. §§ 9.41.090(4), 9.41.094, 9.41.097.

States to submit mental health data to the federal database.[11]  Some States limit

mental health reporting to those who have been subject to in-patient commitment

procedures (though they vary on the length of commitment that triggers reporting),

while other States have more expansive reporting requirements that apply, for

instance, to those subject to involuntary outpatient treatment.[12]  In addition, three

States also require separate searches of juvenile court records.[13]

States also differ in their restrictions on who may possess a firearm.  All

States but Vermont restrict access to firearms by felons.  Some States borrow the

federal definition of "felony," while others apply their own specific definitions.

---

[11] *See* 28 C.F.R. § 25.4; U.S. Gov't Accountability Office, GAO-12-684, *Gun Control:  Sharing Promising Practices and Assessing Incentives Could Better Position Justice to Assist States in Providing Records for Background Checks* 7 (July 2012), *available at* http://www.gao.gov/products/GAO-12-684.

[12] *See* Ariz. Rev. Stat. §§ 13-609, 36-540; Cal. Welf. & Inst. Code §§ 8100, 8103 – 8105; Cal. Penal Code § 28220; Fla. Stat. § 790.065(2)(a)(4); Haw. Rev. Stat. Ann. §§ 134-3.5, 334-2.5(c)(4); Idaho Code Ann. §§ 66-356, 67-3003(1)(i); 405 Ill. Comp. Stat. 5/6-103.2 – 103.3, 430 Ill. Comp. Stat. 65/3.1, 65/4(a)(3), 65/8.1(b), 740 Ill. Comp. Stat. 110/12(b); Ind. Code §§ 12-26-6-8(g), 12-26-7-5(c); Mich. Comp. Laws § 330.1464a; Miss. Code Ann. §§ 9-1-49, 45-9-103; Neb. Rev. Stat. § 69-2409.01; Nev. Rev. Stat. §§ 179A.163(1), 179A.165(1), 433A.310(4), (5); N.C. Gen. Stat. §§ 14-404(c1), 122C-54(d1), (d2); N.D. Cent. Code § 62.1-02-01.2; Or. Rev. Stat. §§ 181.740, 426.130, 426.160, Or. Admin. R. 257-010-0060; 18 Pa. Cons. Stat. §§ 6109(i.1), 6111.1, 50 Pa. Stat. Ann. §§ 7109, 7111, Pa. Code §§ 33.103(e), 33.120; S.D. Codified Laws § 27A-10-24; Tenn. Code Ann. §§ 16-10-213(b), (c), 16-11-206(b), (c), 16-15-303(g), 16-16-120(b), 33-3-115; Va. Code Ann. §§ 19.2-169.2, 37.2-819; Wash. Rev. Code Ann. §§ 9.41.047, 9.41.094, 9.41.097; W. Va. Code §§ 27-5-4(c)(3), 61-7A-2, 61-7A-3, 61-7A-4; Wis. Stat. §§ 51.20(13)(cv)(4), 175.35(2g)(d)(1).

[13] *See* 18 Pa. Cons. Stat. §§ 6109, 6111, 6111.1; Utah Code Ann. § 76-10-526; Wis. Stat. § 175.35.

Twenty-three States and the District of Columbia restrict purchases by those convicted of violent or gun-related misdemeanors.[14]  Twenty-six States limit possession of firearms by juvenile offenders.[15]  Thirty-four restrict access by those who are dangerously mentally ill, though some States' limitations apply only to handguns, and many States' definitions of dangerous mental illness vary.[16]

---

[14] *See* Cal. Penal Code §§ 23515, 29800-29815, 29900-29905; Conn. Gen. Stat. §§ 29-36k, 29-36n, 53a-217, 53a-217c; Del. Code tit. 11, § 1448; D.C. Code § 7-2502.03; Fla. Stat. §§ 790.23, 790.065, 790.233; Haw. Rev. Stat. § 134-7; 430 Ill. Comp. Stat. 65/4, 8; Ind. Code §§ 35-47-2-7, 35-47-4-5, -6; Iowa Code §§ 724.15, 724.26; Me. Rev. Stat. tit. 15, § 393; Md. Code Ann., Pub. Safety §§ 5-101, 5-133, 5-205, 5-206; Mass. Gen. Laws ch. 140, §§ 131, 131E, 131F; Minn. Stat. §§ 518B.01, 609.224, 609.2242, 609.749, 624.713; Neb. Rev. Stat. § 28-1206; N.J. Stat. Ann. §§ 2C:39-7, 2C:58-3; N.Y. Penal Law §§ 265.00, 265.01, 400.00; N.D. Cent. Code § 62.1-02-01; Or. Rev. Stat. §§ 166.250(1)(c), 166.270, 166.470; 18 Pa. Cons. Stat. § 6105; S.D. Codified Laws §§ 22-14-15, 22-14-15.1, 22-14-15.2; Tenn. Code Ann. §§ 39-17-1307, 39-17-1316, Tex. Penal Code § 46.04; Wash. Rev. Code §§ 9.41.010, 9.41.040; W. Va. Code § 61-7-7.

[15] *See* Alaska Stat. § 11.61.200; Ariz. Rev. Stat. §§ 13-904(A)(5), (H), 13-3101(A)(7), 3-3102(A)(4), 13-3113; Cal. Penal Code §§ 29800-29820; Colo. Rev. Stat § 18-12-108; Conn. Gen. Stat. §§ 29-36k, 29-36n, 53a-217, 53a-217c; Del. Code tit. 11, § 1448; Fla. Stat. § 790.23; Haw. Rev. Stat. § 134-7; 430 Ill. Comp. Stat. 65/4, 8; Iowa Code § 724.15; Kan. Stat. § 21-6304; Ky. Rev. Stat. §§ 237.070, 527.040; Me. Rev. Stat. tit. 15, § 393; Md. Code Ann., Pub. Safety §§ 5-101, 5-133, 5-205; Mass. Gen. Laws ch. 140, §§ 129B, 129C, 129D, 131, 131E, 131F; Minn. Stat. § 624.713; N.J. Stat. § 2C:58-3; N.D. Cent. Code § 62.1-02-01; Ohio Rev. Code § 2923.13; Okla. Stat. tit. 21, §§ 1289.12, 1283; Or. Rev. Stat. §§ 166.250(1)(c), 166.470; 18 Pa. Cons. Stat. § 6105; Utah Code § 76-10-503(1)-(3); Va. Code § 18.2-308.2; Wash. Rev. Code § 9.41.040; Wis. Stat. §§ 51.45(13)(i)(1), 54.10(3)(f)(1), 941.29.

[16] *See* Ariz. Rev. Stat. §§ 13-904(A)(5), 13-3101(A)(7), 13-3102(A)(4); Ark. Code §§ 5-73-103, 5-73-132; Cal. Welf. & Inst. Code §§ 8100, 8101, 8103, 8105; Conn. Gen. Stat. §§ 29-36k, 29-36n, 29-38c, 53a-217, 53a-217c; Del. Code tit. 11, § 1448; D.C. Code § 7-2502.03; Fla. Stat. § 790.065; Haw. Rev. Stat. § 134-7; 405

Twenty-seven States and the District of Columbia restrict purchases by drug

abusers,[17] and twenty States and the District of Columbia restrict purchases by

alcohol abusers.[18] Again, though, some States' limitations apply only to handguns,

---

Ill. Comp. Stat 5/6-103.1 – 5/6-103.3, 430 Ill. Comp. Stat. 65/1, 430 Ill. Comp. Stat. 65/4, 8, 8.1; Kan. Stat. § 21-6301(a)(13); Me. Rev. Stat. tit. 15, § 393; Md. Code Ann., Pub. Safety §§ 5-101, 5-133, 5-133.3, 5-205; Mass. Gen. Laws ch. 140, §§ 129B, 129C, 129D, 131, 131E, 131F; Mich. Comp. Laws § 28.422 (handguns); Minn. Stat. § 624.713; Mo. Rev. Stat. § 571.070; Nev. Rev. Stat. § 202.360; N.J. Stat. §§ 2C:39-7, 2C:58-3; N.Y. Penal Law §§ 265.00, 265.01, 400.00; N.Y. Crim. Proc. Law §§ 330.20, 380.96; N.Y. Mental Hygiene Law § 9.46; N.C. Gen. Stat. §§ 14-402, 14-404 (handguns), 14-415.3; N.D. Cent. Code § 62.1-02-01; Ohio Rev. Code § 2923.13; Okla. Stat. tit. 21, §§ 1289.10, 1289.12; Or. Rev. Stat. §§ 166.250(1)(c), 166.470; 18 Pa. Cons. Stat. § 6105; R.I. Gen. Laws § 11-47-6; S.C. Code Ann. §§ 16-23-30 (handguns), 23-31-1040; Tenn. Code § 39-17-1316; Utah Code § 76-10-503(1)-(3); Va. Code §§ 18.2-308.1:1 – 1:3; Wash. Rev. Code § 9.41.040; W. Va. Code § 61-7-7; Wis. Stat. §§ 51.45(13)(i)(1), 54.10(3)(f)(1), 55.12(10)(a), 941.29; Wyo. Stat. § 6-8-404.

[17] *See* Ala. Code § 13A-11-72 (handguns); Alaska Stat. § 11.61.200; Cal. Penal Code §§ 29800-29815; Del. Code tit. 11, § 1448; D.C. Code §§ 7-2502.03, 22-4503; Fla. Stat. § 790.065; Haw. Rev. Stat. § 134-7; 430 Ill. Comp. Stat. 65/1, 430 Ill. Comp. Stat. 65/4, 8; Kan. Stat. § 21-6301(a)(10); Md. Code Ann., Pub. Safety §§ 5-101, 5-133, 5-205; Mass. Gen. Laws ch. 140, §§ 129B, 129C, 129D, 131, 131D; Minn. Stat. § 624.713; Mo. Rev. Stat. § 571.070; Nev. Rev. Stat. § 202.360; N.J. Stat. §§ 2C:39-7, 2C:58-3; N.Y. Penal Law §§ 265.00, 265.01, 400.00; N.C. Gen. Stat. §§ 14-402, 14-404 (handguns); Ohio Rev. Code § 2923.13; Okla. Stat. tit. 21, § 1289.12; 18 Pa. Cons. Stat. § 6105; R.I. Gen. Laws § 11-47-6; S.C. Code Ann. § 16-23-30 (handguns); Tenn. Code §§ 39-17-1316, 39-17-1321; Tex. Penal Code § 46.06(a)(3); Utah Code § 76-10-503(1)-(3); Va. Code § 18.2-308.1:5 (handguns); W. Va. Code § 61-7-7; Wis. Stat. §§ 51.45(13)(i)(1), 54.10(3)(f)(1), 55.12(10)(a), 941.29.

[18] *See* Ala. Code § 13A-11-72 (handguns); Alaska Stat. § 11.61.200; Cal. Welf. & Inst. Code § 8103; Del. Code tit. 24, § 903; D.C. Code § 7-2502.03; Haw. Rev. Stat. § 134-7; Ind. Code §§ 35-47-2-7 (handguns), 35-47-4-1; Kan. Stat. § 21-6301(a)(10); Md. Code Ann., Pub. Safety §§ 5-101, 5-133, 5-205; Mass. Gen. Laws ch. 140, §§ 129B, 129C, 129D, 131E, 131F; Miss. Code Ann. §§ 97-37-5,

and States vary in their criteria for drug and alcohol abuse. Indeed, the States within this Circuit vary in their restrictions on who may possess a firearm. For example, Texas prohibits possession by those convicted of misdemeanor assault, but only for assaults against a family member and only for five years following the misdemeanant's release or the termination of community supervision.[19] Neither Louisiana nor Mississippi has such a restriction.

Crucially, federal background checks are insufficient to enforce these important State restrictions. The federal database did not even accept data from States identifying those ineligible under State law to purchase firearms until 2012,[20] and submission of that data remains strictly voluntary.

Finally, States and local jurisdictions impose different restrictions on the firearms that may be lawfully sold. Some jurisdictions, like Maryland, have banned "Saturday Night Specials"—low-quality and inexpensive firearms favored

---

97-37-13 (handguns); Mo. Rev. Stat. § 571.070; N.J. Stat. §§ 2C:39-7, 2C:58-3; Ohio Rev. Code § 2923.13; Okla. Stat. tit. 21, § 1289.12; 18 Pa. Cons. Stat. § 6105; S.C. Code Ann. § 16-23-30 (handguns); Tenn. Code §§ 39-17-1316, 39-17-1321; Tex. Penal Code § 46.06(a)(3); W. Va. Code § 61-7-7; Wis. Stat. §§ 51.45(13)(i)(1), 54.10(3)(f)(1), 55.12(10)(a), 941.29.

[19] *See* Tex. Penal Code §§ 46.04, 46.06(a)(4).

[20] Criminal Justice Information Services Division, FBI, *National Instant Criminal Background Check System (NICS) Operations 2012*, *available at* http://www.fbi.gov/about-us/cjis/nics/reports/2012-operations-report.

by criminals as disposable weapons that cannot be traced.[21]  Seven States and the

District of Columbia have imposed varying design safety standards for firearms,[22]

though these standards differ among those States.  Seven States and the District of

Columbia have enacted prohibitions on "assault weapons."[23]  Additionally,

Minnesota and Virginia regulate but do not prohibit the sale of such firearms.[24]

These restrictions sometimes apply to semi-automatic handguns and pistols,[25] but

the States employ differing tests to determine whether a firearm qualifies.  Finally,

---

[21] *See* J.S. Vernick, D.W. Webster & L.W. Hepburn, *Effects of Maryland's Law Banning Saturday Night Special Handguns on Crime Guns*, 5 Injury Prevention 259 (1999).

[22] *See* Cal. Penal Code §§ 16380, 16900, 17140, 31900-32110; Cal. Code Regs. tit. 11, §§ 4047 – 4074; D.C. Code § 7-2505.04; D.C. Mun. Regs. tit. 24, § 2323; Haw. Rev. Stat. Ann. § 134-15(a); 720 Ill. Comp. Stat. 5/24-3(A)(h); Md. Code Ann., Pub. Safety §§ 5-405, 5-406; Mass. Gen. Laws ch. 140, §§ 123, 131½, 131¾; 501 Mass. Code Regs. §§ 7.01 – 7.16; 940 Mass. Code Regs. §§ 16.01 – 16.09; Minn. Stat. §§ 624.712, 624.716; N.Y. Penal Law § 400.00(12-a); N.Y. Comp. Codes R. & Regs. tit. 9, § 482.1 – 482.7.

[23] Cal. Penal Code §§ 16350, 16790, 16890, 30500-31115; Conn. Gen. Stat. §§ 53-202a – 53-202o; D.C. Code §§ 7-2501.01(3A), 7-2502.02(a)(6), 7-2505.01, 7-2505.02(a), (c); Haw. Rev. Stat. Ann. §§ 134-1, 134-4, 134-8; Md. Code Ann., Crim. Law §§ 4-301 – 4-303; Md. Code Ann., Pub. Safety § 5-101; Mass. Gen. Laws ch. 140, §§ 121, 122, 123, 131, 131M; N.J. Stat. Ann. §§ 2C:39-1w, 2C:39-5, 2C:58-5, 2C:58-12, 2C:58-13; N.Y. Penal Law §§ 265.00(22), 265.02(7), 265.10, 400.00(16-a).

[24] Minn. Stat. §§ 624.712 – 624.7141; Va. Code Ann. §§ 18.2-287.4, 18.2-308.2:01, 18.2-308.2:2, 18.2-308.7, 18.2-308.8.

[25] *See* Cal. Penal Code §§ 30500-31115; Conn. Gen. Stat. §§ 53-202a – 53-202o; D.C. Code §§ 7-2502.02(a)(6); Haw. Rev. Stat. Ann. §§ 134-1, 134-4, 134-8; Md. Code Ann., Pub. Safety § 5-101 – 5-143; Mass. Gen. Laws ch. 140, § 131; Minn. Stat. §§ 624.712 – 624.7141; Va. Code Ann. §§ 18.2-287.4, 18.2-308.2:01, 18.2-308.2:2, 18.2-308.7, 18.2-308.8.

although no State has yet banned the sale of "ultra-compact" handguns that are increasingly linked to violent crime, several municipalities have done so.[26]

The variety of State regulations on the commercial sale of handguns substantially increases the difficulty for FFLs to comply with every jurisdiction's requirements—a substantially greater regulatory burden than those dealers must face under the In-State Sales Requirement, under which dealers are subject only to the law of their home jurisdiction. Under Plaintiffs' preferred regime, in order to comply with State and local law in addition to their federal obligations, a dealer must track the evolving regulations of 50 States and the District of Columbia, as well as innumerable local jurisdictions. Complying with those lawful regulations would require coordination with countless local law enforcement agencies and access to State and local databases, some of which they may not be able to access. Some regulations—like requiring fingerprint verification of identity—are difficult to implement for out-of-state purchases in person and are virtually impossible to apply to purchases through the mail or over the Internet.

State and local law enforcement agencies would face serious obstacles in enforcing lawful State gun regulations to sales made by out-of-state dealers. There are in excess of 50,000 FFLs nationwide, all of whom would—under Plaintiffs'

---

[26] *See* Violence Policy Center, *Pocket Rockets: The Gun Industry's Sale of Increased Killing Power* (July 2000), *available at* http://www.vpc.org/studies/pockcont.htm.

view of the law—be eligible to sell firearms across state lines directly to consumers.

Additionally, local law enforcement agencies lack both the resources and the legal authority to inspect out-of-state dealers that would be eligible to sell into their State. Yet "[r]esearch clearly demonstrates that enhanced dealer oversight reduces illegal gun trafficking." *Curtailing Dangerous Sales Practices* at 134. In particular, "[r]egular inspection of licensed gun dealers can serve to identify those who fail to account for their inventory, violate record keeping rules, or otherwise disobey the law." *Id.* Such inspections are crucially important because research indicates that some FFLs are willing to evade existing gun restrictions. *Id.* ("In one national study, more than half (52.5%) of dealers surveyed were willing to make a 'straw sale,' where one person unlawfully buys a gun intended for another.") (citation omitted).

Finally, even if a State is able to discover violations of its laws by out-of-state FFLs, it may be unable to prosecute the dealer for that violation. Many States recognize that "an offense against the laws of the State . . . is punishable only when committed within its territory. A person cannot be convicted here for crimes committed in another state." *State v. Butler*, 724 A.2d 657, 660 (Md. 1999) (internal quotation marks and citations omitted). As a result, and contrary to the district court's mistaken suggestion, *see* ROA.485, GRE34, the sale in Texas of a

firearm by a Texas dealer to a resident of the District of Columbia in violation of

the laws of the District may evade prosecution.  For these reasons, the In-State

Sales Requirements are an essential element of the combined federal and state laws

that together form a comprehensive and constitutional regulation on the

commercial sale of firearms.

## II.   PUBLICLY AVAILABLE EVIDENCE STRONGLY SUPPORTS THE RATIONALE FOR THE INTERSTATE SALES RESTRICTION

### A.   Social Science Research Indicates that States Are Successful at Addressing Trafficking Within Their Borders

Social science research supports Congress's chosen solution to require that

interstate firearm sales be routed through local FFLs.  States have had significant

success in implementing measures to control the diversion of firearms within their

borders.  It is therefore sensible to use those intrastate resources to help staunch

interstate weapons trafficking by requiring, as Congress did with the In-State Sales

Requirements, that interstate sales of handguns be routed through local FFLs who

will be best equipped to implement their state-specific firearms regulations.

The evidence shows that stringent state-level firearms regulations are

effective at preventing intrastate gun trafficking.  A key study analyzed variation

across 54 cities from 2000 to 2002 in their ratio of crime guns sold by an in-state

dealer which were subsequently recovered within a year of sale from someone

other than the original purchaser—rapid diversion of a weapon into criminal

activity is a strong indicator of trafficking—to older crime guns sold by both in-state and out-of-state dealers. *See* D.W. Webster, J.S. Vernick, & M.T. Bulzacchelli, *Effects of State-Level Firearm Seller Accountability Policies on Firearm Trafficking*, 86 J. Urban Health 525, 527 (2009). Focusing on this ratio allowed researchers to consider the degree to which firearm sales regulations prevented the local diversion of locally sold firearms without the influence of differences among cities in crime levels and police efforts in recovering weapons. *Id.* Researchers looked at the effect of several gun sale regulations on this ratio: the requirement of a State or local dealer license, a record-keeping requirement, the availability of records to law enforcement for inspection, and the prompt reporting of firearm thefts from dealers. *Id.* at 528. The study found that intrastate trafficking was significantly lower in cities with those gun sale regulations, even when controlling for rates of local gun ownership and proximity to States lacking similar regulations. *See id.* at 531-32.

Other studies have reported similar conclusions. *See* G.J. Wintemute, *Gun shows across a multistate American gun market: observational evidence of the effects of regulatory policies*, 13 Injury Prevention 150, 155 (2007) (reporting that illegal "straw man" purchases were more than six times more likely at gun shows in States that do not regulate private sales than in California which does); D.W. Webster, J.S. Vernick, E.E. McGinty, & T. Alcorn, *Preventing the Diversion of*

*Guns to Criminals through Firearm Sales Laws*, in *Reducing Gun Violence in America: Informing Policy with Evidence and Analysis* 109, 112-14 (D.W. Webster & J.S. Vernick eds., 2013) (*Preventing the Diversion of Guns*") (explaining that following Missouri's repeal of certain firearms regulations, there was a sharp rise in within-state gun trafficking).

The evidence thus demonstrates that the In-State Sales Requirements target the important problem of firearm sales intended to circumvent State laws with a tailored solution. Routing interstate sales through a local FFL allows States to enforce lawful regulations that have proved effective at combating intrastate trafficking. While the In-State Sales Requirements have not halted all interstate gun trafficking, they do not need to in order to pass constitutional muster. Rather, they must only be "reasonably adapted to achieve an important government interest." *NRA v. McCraw*, 719 F.3d 338, 348 (5th Cir. 2013). *Cf. In re Grand Jury Proceedings*, 810 F.2d 580, 588 (6th Cir. 1987) ("[a] state legislature may implement its program of reform by gradually adopting regulations that only partially ameliorate a perceived evil" without also "losing an entire remedial scheme" because "[s]ome play must be allowed for the joints of the legislative machine to operate").

**B.    ATF Data and Social Science Research Establish that Crime Guns Travel from States with Less Comprehensive Firearms Laws to Those with More Comprehensive Firearms Laws**

It was rational for Congress to make use of effective intrastate controls to address the national problem of interstate trafficking in firearms.  As interstate commerce in firearms grew over the course of the last century, Congress came to realize that "existing Federal controls over such traffic d[id] not adequately enable the States to control this traffic within their own borders through the exercise of their police power."  Pub. L. No. 90-351, § 901(a)(1), 82 Stat. at 225.  Congress recognized that handguns were of particular concern because "[n]ot only is mail order a means of circumventing State and local law, but the over-the-counter sale of firearms, *primarily handguns*, to persons who are not residents of the locale in which the dealer conducts his business, affords similar circumvention."  S. Rep. No. 89-1866, at 3 (1966) (emphasis added).

Congress enacted the In-State Sales Requirements to address this problem. *See* 18 U.S.C. § 922(a)(1)-(5), (b)(3).  A "principal purpose" of these regulations was "to assist the States effectively to regulate firearms traffic within their borders."  H.R. Rep. No. 90-1577, *reprinted in* 1968 U.S.C.C.A.N. 4410, 4411 (1968).  Congress understood that, by limiting interstate transfers of firearms to FFLs, it could alleviate "the serious problem of individuals going across State lines to procure firearms which they could not lawfully obtain or possess in their own

State and without the knowledge of their local authorities." S. Rep. No. 89-1866, at 19.

Firearm tracing data gathered by the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") make clear that those concerns remain relevant today. These data show that significant numbers of guns are trafficked across state lines and are then used in violent crime. The persistence of this pattern demonstrates that violent criminals still seek to evade State and local firearms regulations by procuring their weapons in other States, and it highlights the continuing need for the In-State Sales Requirements.

For firearms recovered from a crime scene, "a law enforcement official makes a 'trace request' by entering specific identifying information (such as the firearm's serial number and model) into the ATF Firearms Tracing System, a database maintained by the ATF's National Tracing Center." *10 Ring Precision, Inc. v. Jones*, 722 F.3d 711, 715 n.10 (5th Cir. 2013); *see National Shooting Sports Found., Inc. v. Jones*, 716 F.3d 200, 204 (D.C. Cir. 2013). These "[t]races provide information on the movement of a crime gun from the manufacturer or importer through distributors and ultimately to the retail point of sale and purchase[]." ATF, *ATF Releases U.S. Firearms Trace Data for 2013* (June 9, 2014), *available at* https://www.atf.gov/news/pr/atf-releases-us-firearms-trace-data-2013. Thus, trace

data are invaluable for identifying "interstate . . . patterns in the sources and types of crime guns." *Id.*

Analyses of ATF trace data suggest a clear pattern in the interstate movement of guns from low-regulation States to high-regulation States. In a September 2010 study, Mayors Against Illegal Guns used ATF trace data to analyze all fifty States' and the District of Columbia's crime gun "exports"—*i.e.*, crime guns originally sold in that State that are recovered in another State, as well as "imports"—*i.e.*, crime guns recovered in that State that originated elsewhere. *See generally* Mayors Against Illegal Guns, *Trace the Guns: The Link Between Gun Laws and Interstate Gun Trafficking* (Sept. 2010) ("*Trace the Guns*"), *available at* http://www.tracetheguns.org/report.pdf. That study revealed that in 2009 roughly 30% of the guns recovered from a crime scene in one State had originally been purchased in a different State (43,254 weapons). *See id.* at 4.

As the 2013 ATF data show (also reported in the table below), the trend of consistent interstate gun exports has continued since 2009 and may have worsened. Based on *amicus*'s calculations, in 2013, 47,773 firearms were exported from one State to another and then used in a violent crime, an increase of more than 10% since 2009. *See* Bureau of Alcohol, Tobacco, Firearms, and Explosives, *Firearms Trace Data – 2013*, *available at* https://www.atf.gov/about/firearms-trace-data-

2013.[27]  The top ten States responsible for exports accounted for roughly 48% of those exported weapons and, as the table below demonstrates, were largely the same as in the period from 2006 until 2009.  *Id.*  The data thus demonstrate that guns used in violent crimes cross interstate boundaries in large numbers.

---

[27] *Amicus* calculated States' export rate using 2013 ATF data regarding the number of crime guns traced back to each State.  The export rate for each State was calculated as the total number of guns traced back to a given State minus the number of traced guns recovered within that State.

| 2009 | | 2013 | |
|---|---|---|---|
| Source State | Number of Guns Exported | Source State | Number of Guns Exported |
| Georgia | 2,781 | Georgia | 3,061 |
| Florida | 2,640 | Florida | 3,024 |
| Virginia | 2,557 | Texas | 2,814 |
| Texas | 2,240 | Virginia | 2,574 |
| Indiana | 2,011 | Arizona | 2,026 |
| Ohio | 1,806 | N. Carolina | 2,001 |
| Pennsylvania | 1,777 | Pennsylvania | 2,000 |
| N. Carolina | 1,775 | Indiana | 1,946 |
| California | 1,772 | S. Carolina | 1,797 |
| Arizona | 1,637 | California | 1,732 |

*Sources*: *Trace the Guns* at 5; Bureau of Alcohol, Tobacco, Firearms & Explosives, U.S. Dep't of Justice, *Number of Firearms Sourced and Recovered in the United States and Territories*, https://www.atf.gov /sites/default/files/assets/statistics/TraceData/TraceData _US/TraceData2013Excel/final_source_recovery_by_st ate-cy_2013.xlsx.

While raw numbers of interstate guns exports are useful for understanding the scope and scale of the problem, they do not fully explain the relationship between State laws and interstate gun flows. Populous States like California and Texas are almost certain to export more guns by virtue of the number of persons who reside in and migrate from them. Consequently, looking at the number of crime guns exported per 100,000 inhabitants gives a better sense of the impact of state-level regulations on interstate gun traffic. The national average per-capita rate for crime gun exports in 2013 was 19.7 per 100,000 inhabitants. As the graph below demonstrates, there is substantial variation among the States as to this rate. Some States export crime guns at more than twice the national average rate (*e.g.*,

West Virginia – 53.1 and Mississippi – 49.9), while others export at far lower rates (*e.g.*, the District of Columbia – 3.0 and New York – 2.8). *See Trace the Guns* at 6 (reporting similar figures for 2009).



**Crime Guns Exported Per 100,000 Inhabitants**

| State | Value |
|---|---|
| West Virginia | 53.1 |
| Mississippi | 49.9 |
| Alaska | 39.4 |
| Nevada | 37.8 |
| Wyoming | 37.7 |
| South Carolina | 37.2 |
| Kentucky | 34.9 |
| Alabama | 33.8 |
| Virginia | 30.9 |
| Georgia | 30.3 |
| Arizona | 30.1 |
| Indiana | 29.5 |
| Montana | 28.9 |
| Delaware | 26.4 |
| Arkansas | 25.6 |
| Idaho | 25.3 |
| Vermont | 23.5 |
| New Hampshire | 22.8 |
| Louisiana | 22.8 |
| New Mexico | 22.3 |
| Oklahoma | 20.6 |
| North Carolina | 20.1 |
| NATIONAL AVERAGE | 19.7 |
| Tennessee | 19.2 |
| Oregon | 18.8 |
| Maine | 17.4 |
| Kansas | 17.3 |
| North Dakota | 17.2 |
| South Dakota | 17.0 |
| Utah | 15.7 |
| Pennsylvania | 15.6 |
| Missouri | 15.5 |
| Florida | 15.2 |
| Ohio | 14.9 |
| Colorado | 14.5 |
| Iowa | 13.3 |
| Washington | 13.1 |
| Wisconsin | 11.1 |
| Nebraska | 11.1 |
| Texas | 10.4 |
| Maryland | 9.3 |
| Michigan | 8.0 |
| Connecticut | 7.1 |
| Illinois | 6.7 |
| Minnesota | 6.2 |
| Rhode Island | 5.7 |
| California | 4.5 |
| Massachusetts | 3.6 |
| District of Columbia | 3.0 |
| New York | 2.8 |
| New Jersey | 2.8 |
| Hawaii | 2.4 |

*Sources:* Bureau of Alcohol, Tobacco, Firearms & Explosives, U.S. Dep't of Justice, *Number of Firearms Sourced and Recovered in the United States and Territories,* https://www.atf.gov/sites/default/files/assets/statistics/TraceData/TraceData_US/TraceData2013Excel/final_source_recovery_by_state-cy_2013.xlsx; U.S. Census Bureau, *Annual Estimates of the Resident Population for the United States, Regions, States, and Puerto Rico: April 1, 2010 to July 1, 2014 (NST-EST2014-01),* http://www.census.gov/popest/data/state/totals/2014/tables/NST-EST2014-01.xls.

Much of the variation in the above charts is explained by the differences in States' firearms laws. When Mayors Against Illegal Guns compared the ten states with the highest per-capita export rates of crime guns with the bottom ten states with respect to the presence of ten different firearms regulations, such as allowing

local control of firearms regulations or requiring background checks at gun shows, it found that the top ten export-rate states had generally not adopted these measures, while the bottom ten exporters had.  *See Trace the Guns* at 10-30, 33. That finding suggests that weapons purchased in States with the least restrictive firearms regulations tend to leave those States.

Those guns are likely to end up in States with more stringent gun regulations.  Numerous studies have found that local firearms laws and regulations play a significant role in determining where crime guns go, with weapons purchased in States with less restrictive firearm regimes ending up being used in crimes in States with more restrictive regimes.  For instance, one study applied sophisticated statistical techniques to ATF trace data to examine whether there was a systematic flow of weapons from States with more restrictive regulations to those with less restrictive regimes.  *See* B.G. Knight, *State Gun Policy and Cross-State Externalities: Evidence from Crime Gun Tracing*, Nat'l Bureau of Econ. Research Working Paper No. 17469 (Sept. 2011), *available at* http://www.nber.org/papers/ w17469.pdf.  Controlling for a range of variables, such as State populations and migration between States, that study found that "trafficking flows respond to gun regulations, with guns imported from states with weak gun laws into states with strict gun laws."  *Id.* at 24.

A similar study considered the impact of two firearms regulations—permit-to-purchase licensing, which requires scrutiny of gun purchase applications, and mandatory gun registration—on the proportion of crime guns traced to in-state dealers. *See* D.W. Webster, J.S. Vernick, & L.M. Hepburn, *Relationship between licensing, registration, and other gun sales laws and the source state of crime guns*, 7 Injury Prevention 184, 185 (2001). Controlling for other factors such as pre-existing gun ownership rates and migration between States, that study found that cities with both permit-to-purchase licensing and mandatory gun registration had a lower proportion of crime guns traced to in-state dealers. *See id.* at 187-88. That suggests that crime guns entered these cities from other jurisdictions with less stringent firearms regulations. *See id.* More recent analyses of ATF trace data have reached the same conclusion. *See Preventing the Diversion of Guns* at 114-17 (explaining that "discretionary [permit-to-purchase] laws [a]re the most dramatic deterrent to interstate gun trafficking").

The flow of crime guns from States with less stringent gun regulations to States with more restrictive regimes is strong evidence that Congress's concern with "the serious problem of individuals going across State lines to procure firearms which they could not obtain or possess in their own State and without the knowledge of their local authorities" remains well founded today. S. Rep. No. 89-1866, at 19. Because this is "an interstate problem rather than a multistate,

intrastate problem," *United States v. Wilson*, 73 F.3d 675, 683 (7th Cir. 1995), it was and remains entirely logical for Congress to adopt federal measures, like the In-State Sales Requirements, to respond to the problem of States' firearms laws being circumvented by out-of-state sales. It does not matter if the In-State Sales Requirements are "not necessarily [a] perfect" solution to the problem of interstate gun trafficking. *Board of Trustees of State Univ. of N.Y. v. Fox*, 492 U.S. 469, 480 (1989). The statute does not need to evince "100% complete" success to survive constitutional scrutiny. *Id.* Rather, it need only be a "reasonable" solution, with its "scope is 'in proportion' to the interest served." *Id.* (quoting *In re R.M.J.*, 455 U.S. 191, 203 (1982)). The uncontested fact that "adequate alternatives remain for law-abiding citizens to acquire a firearm for self-defense" under the In-State Sales Requirements makes clear that they are a reasonable and proportionate solution to a serious interstate problem. *Decastro*, 682 F.3d at 168.

## CONCLUSION

The judgment should be reversed.

Dated: July 20, 2015                    Respectfully submitted,


                                        /s/ Sean A. Lev
                                        SEAN A. LEV
                                        MATTHEW A. SELIGMAN
                                        EDUARDO F. BRUERA
                                        KELLOGG, HUBER, HANSEN, TODD,
                                           EVANS & FIGEL, P.L.L.C.
                                        1615 M Street, N.W., Suite 400
                                        Washington, D.C. 20036
                                        (202) 326-7900
                                        (slev@khhte.com)

                                        *Counsel for Amicus Curiae*

**CERTIFICATE OF SERVICE**

I hereby certify that, on July 20, 2015, I electronically filed the foregoing Brief of the Brady Center to Prevent Gun Violence as *Amicus Curiae* in Support of Defendants-Appellants with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the CM/ECF system, which will send notice of such filing to all participants in the case.

/s/ Sean A. Lev
Sean A. Lev

*Counsel for Amicus Curiae*

# CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

The undersigned certifies that this brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) and Federal Rule of Appellate Procedure 29. Exclusive of the portions exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii), this brief contains 6,992 words.

The undersigned further certifies that this brief complies with the typeface and type style requirements of Federal Rule of Appellate Procedure 32(a)(5) and (a)(6) because it has been prepared in a proportionally spaced typeface using Word 2007 in 14-point Times New Roman font.


July 20, 2015                          /s/ Sean A. Lev_____
                                       Sean A. Lev

                                       *Counsel for Amicus Curiae*